THE STATE OF OHIO, APPELLANT, *v.* RUFF, APPELLEE.

[Cite as *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995.]

(No. 2013–1441—Submitted August 19, 2014—Decided March 25, 2015.)

**LANZINGER, J.**

{¶ 1} In this case, we are asked to revisit the holding in *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, with respect to when two or more offenses are allied offenses of similar import. Because the circumstances of when offenses are of dissimilar import within the meaning of R.C. 2941.25(B) have been unclear, we hold that offenses with resulting harm that is separate and identifiable are offenses of dissimilar import. We therefore reverse the judgment of the court of appeals.

## Case Background

{¶ 2} A jury convicted appellee, Kenneth Ruff, of the rape of three women, along with three associated aggravated burglaries, the attempted rape of a fourth woman, and the sexual battery of a minor. For purposes of this opinion, we are concerned only with the rape and aggravated-burglary convictions.

{¶ 3} At trial, K.B. testified that in January 2009, she was living in a group home so that her meals and medication could be monitored. She stated that on the night of the attack, she went to bed at 10:00 p.m. and took her medicine to help her sleep. The next thing she remembered was waking up in the middle of the night with a man raping her. K.B. testified that she started to cry and scream but the man told her, "Shut up or I will kill you." The man, whom she had never seen before, then left. At trial, she identified Ruff as the person who raped her. After the rape, K.B. stayed in the group home for a couple of months and then moved into her own apartment. DNA analysis of semen found in the panties collected from K.B.'s bedroom matched Ruff's DNA.

{¶ 4} S.W. testified at trial that she was living in a basement apartment on the afternoon of May 27, 2009, when a man came over and asked for her ex-husband. She told the man that she was no longer with her ex-husband, and the man left. Later that night, a noise awakened her, and she saw somebody coming toward her. When she realized it was not her boyfriend, she told the person to leave and yelled for help. The man then raped her. During the rape, S.W. grabbed her phone, but the assailant jerked it out of her hands, placed his thumb on her

throat, and pushed down, saying, "If you don't stop fighting me, I'm gonna hurt you." Later, S.W. realized that the man who raped her was the same one who had come by earlier that day looking for her ex-husband. S.W. said that after that night, she made sure all windows were locked and she slept with all the lights on and with a baseball bat and a pipe in her bed. S.W. identified Ruff as the man who raped her. DNA analysis of semen found on her body matched Ruff's DNA.

{¶ 5} During opening statements, the state represented that the third woman, P.F., had died before trial. Details of the events of September 9, 2009, were testified to by a sexual-assault nurse examiner from the medical history that P.F. gave her during her examination. The examiner testified that she writes down word for word what a victim says. According to the statement, P.F. was sitting on her couch when a black man entered her apartment and demanded money. When she said that she did not have any, he pushed her down on the couch and raped her. When P.F. yelled for help, the man put his arm across her neck and said, "I killed once already, and I won't hesitate to do it again." He also hit her on the head with his cell phone and choked her several times. The examiner stated that P.F. had an abrasion and swelling on the right side of her forehead and that there were petechiae in front of her right ear lobe, on the right side of her neck, and on her chest, which was consistent with having been choked. DNA analysis of the semen found on P.F.'s panties matched Ruff's DNA.

{¶ 6} At sentencing, Ruff requested that the three aggravated-burglary counts be merged into the corresponding rape counts. The trial court denied the motion and imposed an eight-year prison term for each of the three aggravated-burglary counts and ordered that they be served concurrently with each other and the other sentences imposed. For the three rapes, the trial court imposed a ten-year prison term for each count and ordered them to be served consecutively to each other and to the five-year, consecutive prison terms for attempted rape and sexual battery, for a total of 40 years.

{¶ 7} Ruff appealed to the First District Court of Appeals. He raised a number of issues regarding his convictions and alleged that the court improperly imposed consecutive sentences, abused its discretion in imposing a 40–year sentence, and failed to merge allied offenses.

{¶ 8} The First District Court of Appeals affirmed the trial court on the nonsentencing issues, but agreed with Ruff that because the conduct relied upon to establish the rapes was the same conduct used to establish the physical-harm element of the aggravated burglaries, the offenses were allied and subject to merger. The court of appeals determined that Ruff's challenges to the imposition of consecutive sentences and the aggregate term of the sentences were moot. The sentences for the aggravated-burglary and rape counts relating to P.F., K.B.,

and S.W. were vacated, and the cases were remanded for the state to elect which allied offense would be pursued for sentencing.

{¶ 9} The state appealed to this court, and we accepted jurisdiction on this sole proposition of law: "The import of rape and aggravated burglary are inherently different." 137 Ohio St.3d 1440, 2013-Ohio-5678, 999 N.E.2d 695. In other words, we were asked to determine what "import" means within the meaning of R.C. 2941.25.

## Analysis

### Protection Against Double Jeopardy

{¶ 10} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This protection applies to Ohio citizens through the Fourteenth Amendment to the United States Constitution, *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), and is additionally guaranteed by the Ohio Constitution, Article I, Section 10. The Double Jeopardy Clause protects against three abuses: (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). It is the third protection—multiple punishments for the same offense—that is before us now.

{¶ 11} In interpreting the federal rule against imposing multiple punishments for the same offense, the United States Supreme Court has said:

> The assumption underlying the rule is that Congress ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the "same offense," they are construed not to authorize cumulative punishments *in the absence of a clear indication of contrary legislative intent*.

(Emphasis added.) *Whalen v. United States*, 445 U.S. 684, 691–692, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Therefore, we look to the Ohio statute, R.C. 2941.25, on this point.

### The Statute, R.C. 2941.25

{¶ 12} The General Assembly in codifying double-jeopardy protections has expressed its intent as to when multiple punishments can be imposed:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

{¶ 13} Because the prosecution selects the charges that may be brought based upon the criminal conduct of an accused and that conduct may potentially support convictions of multiple offenses, the judge must determine whether the conduct can be construed to constitute a single or more than one offense. Thus, R.C. 2941.25(A) allows only a single conviction for conduct that constitutes "allied offenses of similar import." But under R.C. 2941.25(B), a defendant charged with multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus. *State v. Moss*, 69 Ohio St.2d 515, 519, 433 N.E.2d 181 (1982).

{¶ 14} Application of the statute has generated considerable debate.

*Abstract Comparison vs. Actual–Conduct Tests*

{¶ 15} Early cases decided shortly after the effective date of the statute held that before two offenses would be deemed to constitute allied offenses of similar import, "there must be a recognized similarity between the elements of the crimes committed," and where the facts of a case revealed that the same conduct by the defendant constituted the two offenses, a defendant should be afforded the protection of R.C. 2941.25(A). *State v. Logan*, 60 Ohio St.2d 126, 128, 397 N.E.2d 1345 (1979); *see also State v. Roberts*, 62 Ohio St.2d 170, 405 N.E.2d 247 (1980); *State v. Thomas*, 61 Ohio St.2d 254, 400 N.E.2d 897 (1980); *State v. Donald*, 57 Ohio St.2d 73, 386 N.E.2d 1341 (1979). The cases led to formation of a two-step test that, first, compared the elements of the offenses involved and, second, reviewed the defendant's conduct and animus for each offense. *State v. Blankenship*, 38 Ohio St.3d 116, 117, 526 N.E.2d 816 (1988). That test was altered to require an abstract analysis of the offenses that were being compared under R.C. 2941.25(A). *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999), paragraph one of the syllabus.

{¶ 16} We later acknowledged that *Rance* was producing "inconsistent, unreasonable, and, at times, absurd results." *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 20. We overruled *Rance* in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, syllabus. In *Johnson*, we emphasized that abstract analysis of the elements of a crime was insufficient and that the defendant's conduct must be considered when evaluating whether offenses are allied. *Id.* at ¶ 44. While it is true that the syllabus in *Johnson* says that "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered," this language does not offer the complete analysis necessary to determine whether offenses are subject to merger rather than multiple convictions and cumulative punishment. We agree with the state that our decision in *Johnson* was incomplete because R.C. 2941.25(B) provides that when a defendant's conduct constitutes two or more offenses of *dissimilar* import, the defendant may be convicted of all of the offenses.

*The Positions of the Parties*

{¶ 17} The state contends that in analyzing whether offenses are allied offenses of similar import, the court must consider whether they are of the same family of offenses or have a recognized similarity or have the same importance, consequence, and significance and, finally, whether they were committed separately or with a separate animus. In the state's view, rape and aggravated burglary can never be allied offenses because rape is not merely incident to aggravated burglary. The state classifies rape as a crime against a person, whereas aggravated burglary is a crime against property. This difference in classification means they will always have different import, the state concludes.

{¶ 18} Ruff contends that adopting the state's proposition of law would not only undermine but would completely reverse *Johnson*'s holding. He argues that the state's proposed rule that crimes against property and crimes against a person should never merge overlooks situations in which one offense is not complete without the other offense, such as the situation here. An offender does not commit aggravated burglary until the offender inflicts or attempts to or threatens to inflict physical harm on another. In Ruff's view then, aggravated burglary, by requiring an element related to physical harm, must always merge with a violent offense such as rape. But this view ignores the fact that the crimes may have dissimilar import.

{¶ 19} In short, neither party's position completely follows the language of the statute.

*Meaning of "Similar Import"*

{¶ 20} In the cases decided before *Rance*, this court said that offenses are of similar import if it is possible to commit one offense and commit the other offense

with the same conduct. *Donald,* 57 Ohio St.2d at 75, 386 N.E.2d 1341, quoting the court of appeals ("R.C. 2941.25(A) 'prohibits duplication where both crimes are motivated by a single purpose and where both convictions rely upon identical conduct and the same evidence' "). But R.C. 2941.25(B) states that the *same conduct* can be separately punished if that conduct constitutes offenses of *dissimilar* import. R.C. 2941.25(B) sets forth three categories in which there can be multiple punishments: (1) offenses that are dissimilar in import, (2) offenses similar in import but committed separately, and (3) offenses similar in import but committed with separate animus.

{¶ 21} The defendant's conduct is but one factor to consider when determining whether multiple offenses are allied offenses of similar import pursuant to R.C. 2941.25(B). One justice in *Johnson* succinctly explained the idea of dissimilar import: "In practice, allied offenses of similar import are simply multiple offenses that arise out of the same criminal conduct and are similar but not identical in the significance of the criminal wrongs committed and the resulting harm." *Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 64 (O'Connor, J., concurring in judgment). In other words, offenses are not allied offenses of similar import if they are not alike in their significance and their resulting harm.

{¶ 22} We have previously cautioned that the inquiry should not be limited to whether there is separate animus or whether there is separate conduct. Courts must also consider whether the offenses have similar import. *State v. Baer,* 67 Ohio St.2d 220, 226, 423 N.E.2d 432 (1981).

{¶ 23} The state alleges that no opinion from this court has ever clearly defined "import." However, in at least two cases we have illustrated when offenses are of dissimilar import. In each case, we held that when the defendant's conduct put more than one individual at risk, that conduct could support multiple convictions because the offenses were of dissimilar import. *State v. Jones,* 18 Ohio St.3d 116, 118, 480 N.E.2d 408 (1985) (although there was only one car accident, "we view appellant's conduct as representing two offenses of dissimilar import—the 'import' under R.C. 2903.06 being each person killed"); *State v. Franklin,* 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 48 (even though the defendant set only one fire, his conduct caused six offenses of dissimilar import due to risk of serious harm or injury to each person). We have also indicated that offenses are not allied offenses of similar import if neither is incident to the other. *Moss,* 69 Ohio St.2d 515, 520, 433 N.E.2d 181 (aggravated burglary was not an allied offense of aggravated murder, because it was not incident to and an element of aggravated murder). What we conclude from these cases is that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

*The Test for Merger of Multiple Offenses*

{¶ 24} When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses. R.C. 2941.25(B).

{¶ 25} A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation.

{¶ 26} At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

{¶ 27} In this case, Ruff was charged with three counts of rape and three counts of aggravated burglary involving three victims. The trial court imposed separate sentences for each offense because it believed that the offense of aggravated burglary was complete upon the entry into the dwelling. The court of appeals disagreed and determined that because the physical harm that constituted the aggravating factor for the burglary offense was the rape of the victim, Ruff could not be separately convicted for both the aggravated burglary and rape of each victim.

{¶ 28} Although the state's proposition of law asks that we declare that every aggravated burglary is of dissimilar import to rape, we decline to create an absolute rule based upon the definition of the offenses. We do not hold that every aggravated burglary and rape automatically lead to the same import. As we have explained, even if Ruff committed the aggravated burglary and the

corresponding rape of each victim with the same conduct, he could still be convicted of both offenses if the offenses are of dissimilar significance and have separate and identifiable harm. The court of appeals, however, did not consider the import of the offenses.

{¶ 29} We therefore reverse and remand this cause for the court of appeals to consider whether the import of the aggravated burglary and the import of the rape were similar or dissimilar in each of the three separate events.

### Conclusion

{¶ 30} Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.

{¶ 31} As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

{¶ 32} As was previously stated, "We recognize that this analysis may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct—an inherently subjective determination." *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 52 (plurality opinion per Brown, C.J.).

{¶ 33} The judgment of the Hamilton County Court of Appeals is reversed, and the cause is remanded to the court of appeals for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, and O'NEILL, JJ., concur.

FRENCH, J., concurs in judgment only.

PFEIFER, J., dissents.

———————

**FRENCH, J., concurring in judgment only.**

{¶ 34} This case boils down to a question of legislative intent: Did the General Assembly intend to punish a burglar the same as a burglar who rapes someone? Specifically, the court of appeals was required to determine whether the offenses of aggravated burglary and rape share a "similar import" under R.C. 2941.25. While I agree with the majority's decision to remand this case for a similar-import determination, I disagree with the test the majority has articulated. I would determine the similar-import requirement by adopting the standard in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which the vast majority of jurisdictions use, and which is essentially the same as the similar-import test used by this court for decades.

*Multiple Punishments, Legislative Intent, and* Blockburger

{¶ 35} The Fifth Amendment's Double Jeopardy Clause protects only against the imposition of multiple criminal punishments for " 'the same offense, * * * and then only when such occurs in successive proceedings.' " *State v. Washington,* 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 10, quoting *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). In a single criminal proceeding, the permissibility of multiple punishments is a question of legislative intent. *Washington* at ¶ 10.

{¶ 36} For over 80 years, the United States Supreme Court has determined whether two statutory provisions proscribe the "same offense" by using the rule established in *Blockburger.* "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger* at 304. If the answer to this question is no, then the legislature intended for the conduct to be punishable as a single offense. *Id.*

{¶ 37} The *Blockburger* rule, also known as a same-elements test, " 'focuses on the statutory elements of the offense' " and not the particular facts of the case or the proof offered to establish the crimes. *Albernaz v. United States,* 450 U.S. 333, 338, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), quoting *Iannelli v. United States,* 420 U.S. 770, 785, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), fn. 17; *see also United States v. Dixon,* 509 U.S. 688, 704, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (rejecting a same-conduct test).

Blockburger *and R.C. 2941.25's "Similar Import" Requirement*

{¶ 38} Like the Double Jeopardy Clause, R.C. 2941.25 does not prohibit multiple punishments simply because the offenses involve the same conduct. A same-conduct finding only begins the analysis; the court must then determine whether the offenses themselves share a "similar import." R.C. 2941.25(A). Offenses with a "dissimilar import" do not merge, nor do offenses committed with a separate animus as to each. R.C. 2941.25(B). We unanimously reaffirmed

these three bars to merger in *Washington* and recognized that offenses do not merge unless they involve (1) the "same conduct," (2) a "similar import," and (3) a single "animus." *Washington,* 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, at ¶ 12, quoting R.C. 2941.25(A) and (B).

{¶ 39} So when do offenses have similar import? We answered this question the same way "[f]or decades," *Washington* at ¶ 13, in a manner very similar to the *Blockburger* test. Specifically, we compared the statutory elements of the offenses to determine whether "the elements 'correspond to such a degree that the commission of one offense will result in the commission of the other.'" *Washington* at ¶ 13, quoting *State v. Mitchell,* 6 Ohio St.3d 416, 418, 453 N.E.2d 593 (1983), citing *State v. Logan,* 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979); *see also State v. Preston,* 23 Ohio St.3d 64, 65, 491 N.E.2d 685 (1986). This inquiry comports with the judicial doctrine of merger, which asks whether " 'one crime necessarily involves another.'" *State v. Botta,* 27 Ohio St.2d 196, 201, 271 N.E.2d 776 (1971), fn. 1, quoting 21 American Jurisprudence 2d 90 (1965).

{¶ 40} We did not overrule any of these cases in *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. As we clarified in *Washington,* the *Johnson* syllabus merely abandoned a "portion" of the similar-import analysis that we articulated in *State v. Rance,* 85 Ohio St.3d 632, 636, 710 N.E.2d 699 (1999). *Washington* at ¶ 9. Beyond the *Johnson* syllabus, however, "we were divided," and not even a plurality agreed as to how to replace *Rance.* *Id.* at ¶ 15. Blockburger *Is the Best Barometer of Legislative Intent*

{¶ 41} Ohio courts have had little difficulty relying on *Blockburger* when determining whether offenses constitute the same offense in the successive-prosecution context of the Double Jeopardy Clause, *see State v. Zima,* 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542, ¶ 41, and the vast majority of jurisdictions rely on *Blockburger* in the multiple-punishments context. *See, e.g., State v. Cross,* 362 S.W.3d 512, 520 (Tenn.2012) (describing the *Blockburger* test as the "majority view" in the multiple-punishments context); *Jackson v. State,* 291 P.3d 1274, 1278 (Nev.2012); *People v. Ream,* 481 Mich. 223, 238, 750 N.W.2d 536 (2008); *United States v. Ehle,* 640 F.3d 689, 696 (6th Cir.2011). To avoid any more confusion, I recommend using the *Blockburger* rule when determining whether offenses satisfy the similar-import prong of R.C. 2941.25.

{¶ 42} By contrast, the majority's similar-import test does not examine legislative intent. Instead, it collapses into a single analysis that considers conduct dispositive and looks to the number of victims (at least in cases with victims) and the significance of the resulting harm. R.C. 2941.25 already requires subjective inquiries into the offender's conduct and animus. A court must also determine whether the offenses, as defined by the legislature, share a similar import. "Because the statutory elements, not the particular facts of the case, are

indicative of legislative intent, the focus must be on these statutory elements." *Ream* at 238. "[T]he critical double jeopardy inquiry is not factual, *i.e.*, whether the same conduct is at issue in charges brought under different statutes, but legal, *i.e.*, 'whether the "offense"—in the legal sense, as defined by Congress—complained of in one count is the same as that charged in another.' " *United States v. Basciano*, 599 F.3d 184, 198 (2d Cir.2010), quoting *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir.1999). We succinctly put a same-conduct interpretation to rest a century ago: "The words 'same offense' mean same offense, not the same transaction, not the same acts, not the same circumstances or same situation." *State v. Rose*, 89 Ohio St. 383, 386, 106 N.E. 50 (1914).

{¶ 43} I recognize that comparison of elements is not a one-size-fits-all solution to determine the legislative import of two or more offenses. But just as it is unnecessary to apply the *Blockburger* test where there exists a clearer indication of legislative intent, *Missouri v. Hunter*, 459 U.S. 359, 367, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), this court has recognized that it is unnecessary to compare the elements of offenses in cases in which the legislative import may be apparent on the face of a statute itself. *See, e.g., State v. Childs*, 88 Ohio St.3d 558, 561, 728 N.E.2d 379 (2000); *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 37; *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 10.

{¶ 44} The perpetuation of a single fact-based test will continue to move Ohio further from the prevailing view while producing uneven and flawed interpretations of R.C. 2941.25. Accordingly, I disagree with the majority's test and would adopt the *Blockburger* rule.

---

PFEIFER, J., dissenting.

{¶ 45} There is a perfectly valid test available to determine whether the heinous crimes committed in this case are allied offenses. *See State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 48–50 (lead opinion per Brown, C.J.). *Johnson* is straightforward, simple, and in no need of the modification, enhancement, explanation, or tweaking that the majority opinion imposes.

{¶ 46} The first part of the test in *Johnson* requires a determination whether "the multiple offenses can be committed by the same conduct." *Id.*, ¶ 49. An aggravated burglary occurs when a person enters an occupied structure intending to commit a criminal offense and "inflicts, or attempts or threatens to inflict physical harm on another." R.C. 2911.11(A)(1). It does not take sophistry to

contemplate a fact pattern where aggravated burglary and rape are committed by the same conduct. It takes only a casual examination of the facts in this case. As the court of appeals stated, "each aggravated burglary was not completed until Mr. Ruff raped his victims." 2013-Ohio-3234, 996 N.E.2d 513, ¶ 33.

{¶ 47} In each case, Ruff entered an occupied structure intending to commit a criminal offense and while inflicting or threatening to inflict physical harm on a woman, raped her. The two charged crimes, aggravated burglary and rape, can be committed with the same conduct. Indeed, as the court of appeals stated, "the state necessarily relied upon evidence of the rapes to establish the elements of the aggravated-burglary offenses." *Id.* The rape in each case is an essential part of the aggravating circumstance because Ruff did not inflict, attempt to inflict, or threaten to inflict physical harm except incidental to the rape. The first part of the test in *Johnson* is met.

{¶ 48} Accordingly, we must look to the second part of the test in *Johnson,* which requires consideration of whether the crimes were committed by the same conduct, as " 'a single act, committed with a single state of mind.' " *Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 49 (lead opinion per Brown, C.J.), quoting *State v. Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting). In January 2009 and May 2009, Ruff entered a building intending to rape the woman within and he did rape the woman. But the viciousness of the crimes ought not to cloud our judgment about what happened. The facts of the January 2009 and the May 2009 rapes plainly indicate that Ruff committed allied offenses. Ruff entered an occupied structure intending to commit a rape and committed a rape. The aggravated burglaries and the rapes were part and parcel of the same conduct. He ought, therefore, to be punished and punished severely for committing a rape, but he ought not, he cannot also, be punished for an aggravated burglary, which was incidental to the rape.

{¶ 49} The September 2009 rape is different. In that case, Ruff entered an occupied structure and demanded money. There is no indication that he inflicted, attempted to inflict, or threatened to inflict physical harm with respect to the demand for money. Once inside the structure, Ruff raped the woman occupying it. As the court of appeals stated, the demand for money does not make this case different with respect to the first part of the test in *Johnson* because, like the other two cases, the "aggravated burglary was not completed until Mr. Ruff raped his victims." 2013-Ohio-3234, 996 N.E.2d 513, ¶ 33.

{¶ 50} But I am unable to conclude based on the facts of the September 2009 rape that Ruff entering a building intending to obtain money and subsequently raping the woman found within the building are the same conduct. It is obvious that the two crimes were not committed with a single state of mind. I conclude

that the aggravated burglary and the rape of September 2009 are not allied offenses.

{¶ 51} Accordingly, using the unmodified straightforward test set forth in *Johnson*, I would affirm in part (the January 2009 aggravated burglary and rape are allied offenses; the May 2009 aggravated burglary and rape are allied offenses), reverse in part (the September 2009 aggravated burglary and rape are not allied offenses), and remand the cause to the trial court for appropriate sentencing.

---

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Rachel Lipman Currant, Assistant Prosecuting Attorney, for appellant.

The Farrish Law Firm and Michaela M. Stagnaro, for appellee.

Timothy J. McGinty, Cuyahoga County Prosecuting Attorney, and Daniel T. Van and Joseph J. Ricotta, Assistant Prosecuting Attorneys, urging reversal for amicus curiae Cuyahoga County Prosecutor's Office.

Timothy Young, Ohio Public Defender, and Katherine R. Ross–Kinzie, Assistant State Public Defender, urging affirmance for amicus curiae Office of the Ohio Public Defender.