[Cite as *State v. Nagy*, 2017-Ohio-639.]

STATE OF OHIO, COLUMBIANA COUNTY
IN THE COURT OF APPEALS
SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 15 CO 0032 |
| | ) | |
| MICHAEL J. NAGY, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:       Criminal Appeal from Columbiana
                                County Municipal Court Case No. 2014
                                CRB 954

JUDGMENT:                       Affirmed

APPEARANCES:

For Plaintiff-Appellee:         Robert Herron
                                Columbiana County Prosecutor
                                Megan L. Bickerton
                                Assistant Prosecutor
                                105 South Market Street
                                Lisbon, OH  44432

For Defendant-Appellant:        Timothy Young
                                Ohio Public Defender
                                Eric M. Hedrick
                                Assistant Public Defender
                                The Midland Building
                                250 East Broad Street, Suite 1400
                                Columbus, OH  43215

JUDGES:

Hon. Eileen T. Gallagher, of the Eighth
   Appellate District, Sitting by Assignment
Hon. Patricia Ann Blackmon, of the Eighth
   Appellate District, Sitting by Assignment
Hon. Sean C. Gallagher, of the Eighth
   Appellate District, Sitting by Assignment

                                Dated: February 21, 2017

EILEEN T. GALLAGHER, P.J.

{¶1} Defendant-appellant, Michael Nagy ("Nagy"), appeals his convictions and sentence. He raises two assignments of error:

1. Trial counsel rendered ineffective assistance in violation of Mr. Nagy's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 and 16 of the Ohio Constitution.

2. The trial court erred in violation of Mr. Nagy's rights under the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution, Article I, Section 10 of the Ohio Constitution, and R.C. 2941.25, when it failed to merge for sentencing offenses that had a similar import, arose from the same conduct, and were not committed separately or with a separate animus.

{¶2} We find no merit to the appeal, and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶3} Nagy was charged in the Columbiana County Municipal Court with aggravated menacing in violation of R.C. 2903.21, a first-degree misdemeanor, and criminal damaging or endangering in violation of R.C. 2909.06(A)(1), a second-degree misdemeanor. At his arraignment, the court explained the effect of each of Nagy's plea options, his right to a jury trial or a bench trial, his right to counsel, and his right to remain silent. The court also explained the nature of the charges filed against Nagy and their potential penalties. Nagy pleaded not guilty and indicated he would retain counsel for his defense. Consequently, the court reduced his bond and suggested that if Nagy is released from jail pending trial, he "might want to consider signing a waiver of speedy trial." (Arraignment tr. 7.) Nagy signed a speedy trial waiver and subsequently retained counsel. The case proceeded to trial approximately 453 days after Nagy's arrest.

{¶4} The victim, Joann Merriman ("Merriman"), testified that Nagy had been living in her home for approximately three months when they decided to end the relationship. Nagy began moving his belongings out of the house, and Merriman informed him that she was planning to sell the truck they had been sharing. Nagy objected even though the truck was titled in Merriman's name because he wanted her to transfer title to him. (Trial tr. 106.) When Merriman subsequently sold the vehicle, Nagy exchanged angry words with Merriman and the buyers. Merriman left the home during the argument to pick up her son from football practice.

{¶5} Merriman locked the doors to her house as well as the door leading from the inside of the house to the basement. Nagy was using an exterior door that led to the basement from outside to remove the rest of his things. While Merriman was gone, she received text messages from Nagy stating that "things would burn," and that "bad things would happen." (Trial tr. 151, 180.) When Merriman returned home with her children, she immediately noticed a strong smell of gasoline. The local fire department investigated the odor and discovered gasoline spilled on the basement floor surrounding the hot water heater. (Trial tr. 110.) Merriman noticed that some of the gasoline she kept for her lawnmower was missing from its container. (Trial tr. 111.)

{¶6} Based on the evidence adduced at trial, a jury found Nagy guilty of aggravated menacing and criminal damaging. The court sentenced him to 180 days in jail on the aggravated menacing conviction and 90 days on the criminal damaging conviction, to be served consecutively for an aggregate 270-day sentence. Nagy now appeals his conviction and sentence.

## II. Law and Analysis
### A. Speedy Trial

{¶7} In the first assignment of error, Nagy argues his constitutional right to the effective assistance of counsel was violated because his trial counsel failed to move for his discharge under R.C. 2945.73. He contends his trial counsel was ineffective

because he failed to move for dismissal based on a violation of his right to a speedy trial.

**{¶8}** A reviewing court may not reverse a conviction for ineffective assistance of counsel unless the defendant shows that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's error, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus. A "reasonable probability" in this context is one that undermines confidence in the outcome. *State v. Sanders*, 92 Ohio St.3d 245, 274, 750 N.E.2d 90 (2001).

**{¶9}** Thus, in order to establish that Nagy's trial counsel was ineffective, Nagy must demonstrate that had counsel filed a motion for discharge based on a speedy trial violation, the motion would have been granted. R.C. 2945.71(B) governs speedy trial rights in misdemeanor cases and provides that a person charged with a first- or second-degree misdemeanor must be brought to trial within 90 days of the person's arrest. However, speedy trial time may be tolled by either a valid waiver of the defendant's right to speedy trial or any of the circumstances enumerated in R.C. 2945.72. *State v. Hudson*, 7th Dist. No. 11 MA 77, 2013-Ohio-5529, ¶ 14-15. Nagy asserts his speedy trial waiver was not valid because the court failed to properly explain his right to a speedy trial.

**{¶10}** As with other fundamental rights, the accused may waive the right to a speedy trial by knowingly and voluntarily executing an express written waiver. *State v. O'Brien*, 34 Ohio St.3d 7, 516 N.E.2d 218 (1987), paragraph one of the syllabus. In order to execute a knowing and intelligent waiver of one's right to a speedy trial, the defendant must understand (1) the nature of the charges against him, (2) what is being waived, and (3) the extent of the waiver. *State v. Adams*, 43 Ohio St.3d 67, 69, 538

N.E.2d 1025 (1989). To be effective, the defendant's speedy trial waiver must also "be expressed in writing or made in open court on the record." *State v. King*, 70 Ohio St.3d 158, 637 N.E.2d 903 (1994), syllabus.

{¶11} As previously stated, the court explained the nature of the charges pending against Nagy as well as the possible penalties attendant to the charges. Nagy indicated on the record that he understood the charges and penalties. With respect to the speedy trial waiver, the court stated:

> If you are getting out of jail you might want to consider signing a waiver of speedy trial so we don't have to try your case within 90 days. If you don't want to do that, that's fine. But that means your next hearing will be a lot quicker. So if you want to sign that green sheet that means your next hearing is going to be in about a month. That will give you more time to come up with money for your attorney and so on. If, on the other hand, you don't want to do that we'll probably set your hearing in about 10 days to two weeks.

{¶12} The trial court informed Nagy that if he chose not to execute a speedy trial waiver, he would receive a trial within 90 days. Nagy would have reasonably inferred that the law required his case go to trial within 90 days if he did not waive the right to trial within that time frame. Thus, although the court did not use the term "right" to a speedy trial, the record shows Nagy understood he was relinquishing the right to have his trial within the 90-day time limitation prescribed by law.

{¶13} The court did not mention any time limitations on the waiver of Nagy's right to have his trial within 90 days. In the absence of any express limitations, Nagy could only conclude that the waiver was of unlimited duration. Indeed, Nagy responded to the court's questions appropriately and intelligently throughout the proceedings. Furthermore, the court asked Nagy if he had any questions regarding any of his rights, to which he replied "no." (Arraignment tr. 8.)

**{¶14}** The written speedy trial waiver signed by Nagy also explained that Nagy was giving up his right to speedy trial. The written waiver states:

> I represent that I understand my right to have my case brought to trial within certain time limits as set by law in the Ohio Revised Code, and Rules of Criminal Procedure. I further understand my right under the U.S. and Ohio Constitutions to have a speedy trial.

> I hereby knowingly, intelligently, and voluntarily waive (give up) my right to a hearing of my case within the time limits set by the Constitutions of the U.S. and Ohio, by the Ohio Revised Code and by the Rules of Criminal Procedure.

**{¶15}** Nagy has not suggested that he was unable to read or understand the written waiver. Thus, the record reflects that Nagy knowingly and intelligently executed a written waiver of his right to a speedy trial.

**{¶16}** Moreover, there were no limitations included in the speedy trial waiver. The Ohio Supreme Court has held that where an accused executes a written speedy trial waiver of unlimited duration, "the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection to any further continuances and makes a demand for trial, following which the state must bring him to trial within a reasonable time." *State v. O'Brien*, 34 Ohio St.3d 7, 9, 516 N.E.2d 218 (1987).

**{¶17}** Therefore, even if Nagy's counsel had moved for dismissal on the basis of an alleged speedy trial violation, the court would not have granted a dismissal or discharge. At best, the court may have considered the motion for discharge as a revocation of the speedy trial waiver and would have scheduled the trial sooner than the date of the actual trial. Indeed, the trial date was continued to allow Nagy to retain counsel and at his trial counsel's request. Although the state requested a continuance and the court sua sponte continued the trial a couple of times, the court's continuances

resulted from the court's engagement in other trial proceedings.  There is no evidence that Nagy was prejudiced by the late trial date, and he was not incarcerated pending trial.

{¶18} Therefore, the first assignment of error is overruled.

## B.  Allied Offenses

{¶19} In the second assignment of error, Nagy argues the trial court violated his rights under the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution because it failed to merge allied offenses of similar import.  He contends his aggravated menacing conviction should have merged with his criminal damaging conviction.

{¶20} R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution, which prohibits multiple punishments for the same offense.  *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23.  Under R.C. 2941.25(A), when the same conduct by the defendant "can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."  However, R.C. 2941.25(B) provides that

> [w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶21} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court held that if a defendant's conduct consisted of multiple offenses, the defendant can be convicted of all of the offenses if any one of the following is true (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows the offenses were committed separately, or (3) the conduct shows that each of the

offenses were committed with a separate animus. *Id.* at paragraph three of the syllabus, citing R.C. 2941.25(B). Two or more offenses are of dissimilar import within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

{¶22} Nagy was convicted of aggravated menacing in violation of R.C. 2903.21, which states that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." Nagy committed aggravated menacing when he sent Merriman threatening text messages, stating that "things would burn" and "bad things were going to happen."

{¶23} Nagy was convicted of criminal damaging in violation of R.C. 2909.06, which states, in relevant part, that "[n]o person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent." Nagy committed criminal damaging when he poured gasoline around Merriman's water heater where it could have been ignited and caused an explosion. The act of sending the text messages was separate and apart from the act of pouring gasoline on Merriman's basement floor. Although Nagy's intent behind both actions was to intimidate Merriman, the two acts were committed separately. The Ohio Supreme Court held that where conduct is committed separately, the separate acts are not subject to merger. *Ruff* at paragraph three of the syllabus.

{¶24} Therefore, the trial court did not violate Nagy's right to be free from double jeopardy when the court sentenced him separately on each of his convictions. Accordingly, the second assignment of error is overruled.

### III. Conclusion

{¶25} Nagy's right to the effective assistance of counsel was not violated. Even if his trial counsel had moved for dismissal based on a violation of his right to speedy trial, the motion would have been denied because Nagy executed a valid waiver of his right to speedy trial. And the trial court properly sentenced Nagy on both

of his convictions, where the acts underlying the convictions were committed separately and were therefore not subject to merger.

{¶26} The trial court's judgment is affirmed.

Patricia Ann Blackmon, J., concurs
The Eighth Appellate District, Sitting by Assignment

Sean C. Gallagher, J., concurs; see concurring opinion
The Eighth Appellate District, Sitting by Assignment


SEAN C. GALLAGHER, J., CONCURRING:

{¶27} While I concur with the majority's analysis and opinion on both assigned errors, I write separately to further address the allied offense issue raised in the second assigned error.

{¶28} Nagy complains that because the victim testified she was not initially in fear or intimidated by the text message, that act cannot form the basis of separate conduct that would subject him to independent convictions for both aggravated menacing and criminal damaging. Nagy further asserts that because aggravated menacing can be committed by a threat to a person or property the act of criminal damaging is already present in the aggravated menacing offense under these facts.

{¶29} Nagy's conduct in sending the text message and the victim's initial response upon its receipt cannot be viewed in a vacuum. If the victim had not received the text message, she would have had no context within which to understand the smell of gasoline coming from the basement. It is the victim's realization that Nagy had made good on this threat intertwined with that text message that bolsters the majority's finding of separate conduct involving that text message and aggravated menacing. Without the text message, there would be no threat.

{¶30} More significant than the conduct, the harm in these convictions is separate and distinct despite the fact that the conduct and elements of the separate offenses overlap. The harm under the aggravated menacing charge relates to the

victim personally, while the harm under the criminal damaging charge goes to her residence. Even if the conduct underlying the two offenses is the same, separate harms is an independent reason justifying multiple sentences. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892.

**{¶31}** Nagy confuses separate means to commit aggravated menacing (either by a threat to a person or property) with the separate conduct and harm related to separate convictions.