**[Cite as *State v. Olson-Graf*, 2024-Ohio-2291.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29988 |
| | : | |
| v. | : | Trial Court Case No. 2023 CR 00771 |
| | : | |
| ELIZABETH OLSON-GRAF | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 14, 2024

. . . . . . . . . . .

CHRISTOPHER BAZELEY, Attorney for Appellant

MATHIAS H. HECK, JR., by SARAH H. CHANEY, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Elizabeth Olson-Graf appeals from her convictions for two counts of violating of a protection order and one count of telephone harassment. She contends that the court erred in accepting her guilty pleas. She further contends that the trial court erred in failing to merge the offenses for sentencing. We conclude that the record affirmatively demonstrates that Olson-Graf entered her pleas knowingly,

voluntarily, and intelligently. We further conclude, and the State concedes, that the trial court should have merged the offenses for sentencing, as the offenses were allied offenses. Therefore, the judgment of the trial court is affirmed in part, reversed in part, and remanded for resentencing.

## I.     Factual and Procedural History

{¶ 2} On March 22, 2023, Olson-Graf was indicted on one count of violating a protection order by committing a felony in violation of R.C. 2919.27(A)(2), one count of telecommunications harassment (prior conviction) in violation of R.C. 2917.21(A)(1), and one count of violation of a protection order (three prior convictions for violation of a protection order) in violation of R.C. 2919.27(A)(2).

{¶ 3} Following plea negotiations, Olson-Graf agreed to plead guilty as charged in exchange for the State's recommendation of community control sanctions. A plea hearing was conducted on August 14, 2023. Following the entry of a guilty pleas, the court found Olson-Graf guilty of the three charges. A sentencing hearing was held on August 24, 2023. The trial court sentenced Olson-Graf to a prison term of 36 months for the charge of violating a protection order by committing a felony and to 12 months for each of the other charges. all to run concurrently, for an aggregate prison term of 36 months.

{¶ 4} Olson-Graf appeals.

## II.     Plea

{¶ 5} The first assignment of error states:

OLSON-GRAF'S PLEA WAS NOT KNOWINGLY, VOLUNTARILY, OR INTELLIGENTLY GIVEN.

{¶ 6} Olson-Graf contends her guilty plea was not knowingly, intelligently, and voluntarily entered because the trial court failed to advise her at the plea hearing that it was not bound by the recommended sentence. She further argues that she "had difficulty understanding the impact" of her plea.

{¶ 7} To comport with due process, a guilty plea must be entered knowingly, intelligently, and voluntarily. *State v. Bateman*, 2d Dist. Champaign No. 2010-CA-15, 2011-Ohio-5808, ¶ 5, citing *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). "Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty or no contest." *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8. "By following this rule, a court ensures that the plea is knowing, intelligent, and voluntary." *State v. Cole*, 2d Dist. Montgomery No. 26122, 2015-Ohio-3793, ¶ 12. " 'In considering whether a guilty plea was entered knowingly, intelligently and voluntarily, an appellate court examines the totality of the circumstances through a de novo review of the record to ensure that the trial court complied with constitutional and procedural safeguards.' " *State v. Redavide*, 2d Dist. Montgomery No. 26070, 2015-Ohio-3056, ¶ 10, quoting *State v. Barner*, 4th Dist. Meigs No. 10CA9, 2012-Ohio-4584, ¶ 7.

{¶ 8} We first address the claim that the trial court was required to advise Olson-Graf that it might deviate from the recommended sentence of community control

sanctions. This court has previously addressed this issue in *State v. Melson*, 2d Dist. Clark No. 2022-CA-53, 2023-Ohio-1231. In *Melson*, we acknowledged that the "better practice is 'to specifically forewarn' a defendant" of the fact that the trial court is "not bound by the State's recommendation." *Id.* at ¶ 11. However, we found no error in the trial court's failure to give such an advisement to the defendant. In doing so, we noted that the only promise made to the defendant was the State's promise to recommend community control sanctions, which the State fulfilled. *Id.* at ¶ 10. Further, prior to accepting the defendant's plea, "the trial court reviewed the potential penalties involved and its sentencing options, which included references to both community control and the statutory maximum prison term." *Id.* The defendant also signed a plea form stating that the only relevant promise was the State's recommendation of community control. Thus, we concluded that under such circumstances, "it would have been unreasonable for [the defendant] to 'read any promises by the court into the plea or the transactions that induced it.'" *Id.*, quoting *State v. Dixon*, 2d Dist. Clark No. 2002-CA-45, 2004-Ohio-4252, ¶ 11. We further concluded that the trial court's advisements prior to accepting the plea informed the defendant of the court's ability to impose a prison sentence rather than follow the State's recommendation. *Id.* at ¶ 16.

{¶ 9} After a careful review of the record, we conclude that the pending case is factually indistinguishable from *Melson*. Here, as in *Melson*, the only promise made to Olson-Graf was the State's promise to recommend a community control sanction (CCS) sentence, which it did. The record reflects that Olson-Graf was informed that, in exchange for pleading guilty as charged, "the State [was] going to recommend [CCS]."

When asked if she understood the State's offer, Olson-Graf responded affirmatively. Moreover, the trial court informed Olson-Graf that she could be sentenced to a prison term of "9, 12, 18, 24, 30 or 36 months" if she violated the protection order by committing a felony and that, on the remaining two counts, both fifth degree felonies, she could be sentenced to a prison term between "6 months and 12 months" on each count. Olson-Graf indicated that she understood the potential prison terms. When the trial court inquired if anyone had promised she would be sentenced to CCS, Olson-Graf answered no. In short, the ambiguity and confusion Olson-Graf suggests is belied by the record.

{¶ 10} We next address the claim that Olson-Graf was unable to understand her plea. She bases this argument on her claim that the record shows she had difficulty understanding the proceedings. Specifically, she notes that, after the charges were read into the record, the trial court asked her whether she understood the charges and whether the facts alleged therein were true. In response, Olson-Graf stated, "[n]ot exactly." After permitting her to consult with her attorney, the court repeated the question, and Olson-Graf acknowledged that she understood the charges against her and that the facts alleged were true. The court then asked her whether she had contacted the victim despite the existence of the protection order. Olson-Graf stated, "[t]hat's what I hear." The court again permitted her to consult with counsel. The court then asked her whether she understood the charges and whether the facts contained within the charges were true. Olson-Graf answered affirmatively.

{¶ 11} The record reveals that the trial court had ordered a mental health examination for Olson-Graf. Following that examination and a full hearing, she was

found to be competent to stand trial. Further, other than the responses set forth above, Olson-Graf responded appropriately to the trial court during the entire course of the plea colloquy. Additionally, the presentence investigation report (PSI) filed in this record demonstrates that Olson-Graf had more than 60 misdemeanor convictions and two prior felony convictions. Thus, it is evident that she had significant familiarity with the justice system and its proceedings. Based upon this record, and without more to substantiate her claims, we cannot conclude Olson-Graf had difficulty understanding the proceedings.

{¶ 12} The first assignment of error is overruled.

### III. Allied Offenses

{¶ 13} The second assignment of error asserted by Olson-Graf states:

THE TRIAL COURT PLAINLY ERRED WHEN IT FAILED TO MERGE ALL OF OLSON-GRAF'S CONVICTIONS AT SENTENCING.

{¶ 14} Olson-Graf argues that her convictions were allied offenses of similar import and should have merged for purposes of sentencing.

{¶ 15} R.C. 2941.25, Ohio's allied-offenses statute, provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or

information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 16} In determining whether offenses are subject to merger under R.C. 2941.25, courts evaluate three separate factors — the import, the conduct, and the animus. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraphs one and three of the syllabus. Offenses do not merge, and a defendant may be convicted of and sentenced for multiple offenses, if any one of the following is true: (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id.* at paragraph three of the syllabus, ¶ 25, 31.

{¶ 17} According to the record before us, the charges stem from a long pattern of harassment by Olson-Graf against her deceased husband's ex-wife. A review of the PSI indicates that the victim alerted the police after she received a telephone call on March 11, 2023. The victim indicated that she had answered that call and discovered Olson-Graf was the caller when Olson-Graf screamed at the victim. Although the PSI indicated that the victim had received approximately 13 prior calls which did not have a caller identification, the victim admitted that she had not answered those calls. Thus, she was not able to identify Olson-Graf as the caller in any of those incidents. The indictment specifically referred to March 11, 2023, as the date of the charged offenses.

{¶ 18} Based on this record, the three offenses were committed with the commission of one telephone call which resulted in a charge of harassment and two charges of violation of a protection order. As such, we are constrained to conclude that

these convictions should have been merged as allied offenses. The State concedes error.

{¶ 19} Accordingly, the second assignment of error is sustained.

## IV.     Conclusion

{¶ 20} The judgment of the trial court is affirmed in part, reversed in part, and remanded for resentencing.

. . . . . . . . . . . . .

WELBAUM, J. and HUFFMAN, J., concur.