[Cite as *State v. Dabney*, 2015-Ohio-4142.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-140575 |
| | | TRIAL NO. B-1202504(A) |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| JAMES DABNEY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed and Cause Remanded

Date of Judgment Entry on Appeal: October 7, 2015

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *David Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

Please note: this case has been removed from the accelerated calendar.

**SYLVIA SIEVE HENDON, Presiding Judge.**

{¶1} Following a jury trial, James Dabney was convicted of money laundering, theft, and five counts of telecommunications fraud for his role as a major player in a ring that stole merchandise and store credit cards from Home Depot stores in and around Cincinnati.

{¶2} Dabney advances the following arguments in this appeal: (1) his convictions were based on insufficient evidence and were against the weight of the evidence, (2) the court improperly imposed multiple sentences on allied offenses, (3) the court erred by denying his motion to dismiss on speedy-trial grounds, (4) the court improperly imposed maximum and consecutive sentences, and (5) the court erred by assessing as costs the expense of transcribing the trial transcript for purposes of appeal.

### Weight and Sufficiency

{¶3} In his first assignment of error, Dabney challenges the weight and sufficiency of the evidence supporting his convictions. In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

{¶4} The money-laundering statute, R.C. 1315.55(A)(1), provides:

> No person shall conduct or attempt to conduct a transaction knowing that the property involved in the transaction is the proceeds of some form of unlawful activity with the purpose of committing or furthering the commission of corrupt activity.

{¶5} The state presented evidence that Dabney had supplied counterfeit currency to individuals who then tendered it at Home Depot stores to illegally "purchase" merchandise. Those individuals would then return the stolen merchandise to Home Depot with the purchase receipts, and would receive United States currency in exchange for the returned stolen items. In this way, the individuals used Home Depot as an unwitting participant in their money-laundering scheme — they used fake or "dirty" money to steal the merchandise and then returned the merchandise to obtain genuine or "clean" money.

{¶6} In addition, Dabney was convicted of five counts of telecommunications fraud, four of which were felonies of the fifth degree. The remaining count was a felony of the fourth degree, because the value of the property was more than $7,500. *See* R.C. 2913.05(C). R.C. 2913.05(A), the telecommunications-fraud statute, provides:

> No person, having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, or telecommunications service any writing, data, sign, signal,

picture, sound, or image with purpose to execute or otherwise further the scheme to defraud.

{¶7}   The state presented evidence that Dabney had devised a scheme whereby, at his direction and with his cooperation, five codefendants used their personal identification to return stolen merchandise.  To return an item without a receipt, Home Depot required a customer to produce a driver's license or state identification card.  The customer's license or identification was scanned by a Home Depot employee through an internet-based system operated by a third-party vendor that monitored customer returns and store inventory.  In exchange for the nonreceipted merchandise, Home Depot issued a store credit card to the customer.  Once a customer reached a certain number of nonreceipted returns, the system flagged the customer's license or identification card for potential fraud, and no longer allowed that customer to make nonreceipted returns of merchandise.

{¶8}   After Dabney had made 47 nonreceipted merchandise returns for more than $12,000 worth of merchandise in a three-month period, the third-party vendor's system no longer accepted his license or identification.  So Dabney began recruiting others to return stolen merchandise without receipts.  After ensuring that his recruits had "fresh" identification that had not been flagged by Home Depot for fraudulent returns, Dabney would give them stolen merchandise to return to Home Depot.  The person would make a return using his or her identification.  Then, after Home Depot had issued a store credit card in return for the stolen merchandise, the person gave the card to Dabney.  In return, Dabney would pay the person a nominal amount.  One of the codefendants, working with Dabney, had engaged in fraudulent,

nonreceipted returns totaling $7,738.93. Thus, the state presented sufficient evidence to elevate the offense to a fourth-degree felony.

{¶9} Lastly, Dabney was convicted of theft, in violation of R.C. 2913.02(A)(3), for knowingly obtaining or exerting control over Home Depot's property by deception. At trial, the state presented evidence that Dabney and his cohorts had stolen merchandise from Home Depot stores using various shoplifting methods to obtain merchandise that was not paid for or receipted. And Dabney personally conducted nonreceipted returns of stolen merchandise totaling $12,168.45, for which he had received store credit cards in exchange.

{¶10} Following our review of the record, we hold that Dabney's convictions were based upon sufficient evidence and were not against the manifest weight of the evidence. *See Thompkins.* We overrule the first assignment of error.

### *Sentencing Issues*

{¶11} Dabney was indicted for one count of money laundering, six counts of theft, six counts of telecommunications fraud, and seven counts of receiving stolen property. At trial, a receiving-stolen-property count was dismissed at the state's request. The jury found Dabney guilty of the remaining 19 counts.

{¶12} The trial court merged for sentencing purposes the remaining receiving-stolen-property counts with five theft counts and five counts of telecommunications fraud. The court imposed a three-year prison term for money laundering; an 18-month prison term for theft; and one-year prison terms on each count of telecommunications fraud, for a total prison sentence of nine and one-half years.

### a. Allied Offenses of Similar Import

{¶13} In his second assignment of error, Dabney argues that the trial court erred by imposing multiple sentences for allied offenses. He contends that the money-laundering offense was allied with the theft and telecommunications-fraud offenses.

{¶14} The record demonstrates that the offenses were committed separately. Dabney's money-laundering conviction was based upon his counterfeit-currency operation. His theft conviction was based upon his stealing and then returning stolen nonreceipted merchandise for store credit. And the five telecommunications-fraud convictions were based upon his separate conduct in directing five separate codefendants to engage in fraudulent transactions with their identification cards.

{¶15} Dabney's conduct showed that each of the offenses was committed separately, so separate convictions were permitted under R.C. 2941.25. *See State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph three of the syllabus. Consequently, the trial court properly sentenced him separately on each of the offenses. We overrule the second assignment of error.

### b. Maximum and Consecutive Prison Terms

{¶16} In his fourth assignment of error, Dabney argues that the trial court erred by sentencing him to maximum prison terms for six of the seven offenses and by ordering the sentences to be served consecutively.

{¶17} Under R.C. 2953.08(G)(2), we may modify or vacate Dabney's sentence only if we clearly and convincingly find that the record does not support the mandatory sentencing findings, if any, or that the sentence is otherwise contrary to law. *See State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 11 (1st Dist.).

{¶18} The trial court stated on the record that it had considered the overriding purposes of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors contained in R.C. 2929.12. In addition, the court stated that it had considered the presentence-investigation report, the victim-impact statement, Dabney's statement, and the evidence presented at trial. The court journalized a sentencing worksheet which recorded its findings that Dabney's offenses were committed as part of organized criminal activity, that he had served a prior prison term, and that he had committed the offenses while he was on community control. In addition, the court made the R.C. 2929.14(C) findings before imposing consecutive sentences. *See State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659. Dabney has not alleged any error with respect to those findings and has not demonstrated that his sentence was contrary to law. *See White.*

{¶19} But the record reflects that the trial court did not incorporate its consecutive-sentence findings into the sentencing entry. Therefore, we remand the matter so that the trial court can correct this clerical mistake by a nunc pro tunc entry. *See Bonnell* at ¶ 30; *State v. Davis*, 1st Dist. Hamilton No. C-140351, 2015-Ohio-775, ¶ 7-10. Consequently, we sustain in part and overrule in part the fourth assignment of error.

### *Speedy Trial*

{¶20} In his third assignment of error, Dabney argues that the trial court erred by denying his motion to dismiss the indictment on speedy-trial grounds. Ohio's speedy-trial statute, R.C. 2945.71, required that Dabney be brought to trial within 270 days of his arrest on June 6, 2012. Each day that he was held in jail in lieu of bail must be counted as three days. *See* R.C. 2945.71(E). So the state had 90

days from the arrest to bring Dabney to trial. *See State v. MacDonald*, 48 Ohio St.2d 66, 357 N.E.2d 40 (1976), paragraph one of the syllabus (construing former R.C. 2945.71(D), now (E)).

{¶21} Speedy-trial time may be extended only for the reasons set forth in R.C. 2945.72. In particular, any period of delay occasioned by the defendant extends the time within which the defendant must be tried. *See* R.C. 2945.72(E). In addition, R.C. 2945.72(H) provides that speedy-trial time may be tolled for "[t]he period of any continuance granted on the accused's own motion and the period of any reasonable continuance granted other than upon the accused's own motion."

{¶22} Dabney acknowledges that he had expressly waived most of the time between his arrest and his trial on May 27, 2014. But he points to three time periods to support his contention that his speedy-trial rights were violated.

{¶23} With respect to the first time period from July 1 to July 18, 2013, the state does not dispute that the 17 days were not attributable to Dabney.

{¶24} Next, Dabney argues that the 42-day period from January 8 through February 19, 2014, was chargeable to the state. The record reveals, however, that on October 24, 2013, Dabney had executed a written time waiver through February 10, 2014. And on January 15, 2014, Dabney's attorney had signed an entry continuing the matter "at the request of the Defendant" until February 27, 2014. The entry noted that the reason for the continuance was that the "new attorney needs time to prepare," and stated that the defendant waived time. Dabney contends that the entry was ineffective because it was not signed by the trial judge.

{¶25} To be effective, a criminal defendant's waiver of his or her constitutional and statutory speedy-trial rights must be expressed in writing or made

8

in open court on the record. *See State v. King*, 70 Ohio St.3d 158, 637 N.E.2d 903 (1994). Defense counsel may waive the defendant's speedy-trial rights, and the defendant is bound by the waiver, even if the waiver was executed without the defendant's consent. *See State v. McBreen*, 54 Ohio St.2d 315, 376 N.E.2d 593 (1978).

{¶26} In this case, defense counsel expressly waived Dabney's speedy-trial rights in writing, and that waiver was journalized as part of the record. The lack of a trial judge's signature on the document does not alter our conclusion that Dabney was bound by the written waiver. *See King*; *McBreen*. Moreover, the time had been tolled by operation of R.C. 2945.72(E), because Dabney had several motions pending at the time, including a pro se motion to suppress statements, as well as two supplemental motions to suppress filed by defense counsel. Accordingly, the second period of time cited by Dabney was not attributable to the state.

{¶27} Finally, Dabney argues that the period from March 3 to May 14, 2014, was chargeable to the state. The record reveals that on February 27, 2014, the trial court had begun a suppression hearing that, due to the complexity of the evidence and the number of witnesses, had to be continued in progress until March 14. On March 14, the court heard more evidence on the motions to suppress, and at the request of defense counsel, scheduled closing arguments on the suppression motions for March 24, 2014. On that date, the parties presented their closing arguments on Dabney's motions to suppress, and the court denied the motions the following day.

{¶28} Then on May 15, 2014, Dabney filed a motion to dismiss the indictment. The court denied the motion to dismiss on May 27, 2014, the first date of Dabney's trial.

{¶29} For speedy-trial purposes, time was tolled from March 3 until the denial of Dabney's motions to suppress on March 25, 2014, and from the filing of his motion to dismiss on May 15 to its denial on May 27, 2014. *See* R.C. 2945.72(E); *see also State v. Benton*, 1st Dist. Hamilton Nos. C-130556, C-130557 and C-130558, 2014-Ohio-2163. Moreover, defense counsel had expressly waived time for the period from March 14 to March 24, 2014. So only the 51 days from March 25 to May 15 were attributable to the state.

{¶30} Because Dabney was tried well within the remaining statutory time, the trial court did not err in overruling his motion to dismiss the charges for lack of a speedy trial. We overrule the third assignment of error.

### *Trial Transcript*

{¶31} In his fifth assignment of error, Dabney argues that the trial court erred by assessing as costs the expense of transcribing the trial proceedings for purposes of appeal. Dabney correctly points out that an indigent defendant has a right to a transcript of prior proceedings when the transcript is needed for a direct appeal. *See Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971); *State ex rel. Ralston v. Hill*, 65 Ohio St.2d 58, 417 N.E.2d 1380 (1981). However, in this case, the error complained of is not reflected in the record. *See* App.R. 16(A). Therefore, we overrule the fifth assignment of error. *See* App.R. 12(A)(2).

### *Conclusion*

{¶32} In conclusion, we affirm the judgment of the trial court. But we remand the cause for the trial court to incorporate the R.C. 2929.14(C)(4) consecutive-sentencing findings into the sentencing entry by nunc pro tunc entry.

Judgment affirmed and cause remanded.

CUNNINGHAM and MOCK, JJ., concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.