[Cite as *State v. Setty*, 2017-Ohio-9059.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-28 |
| | : | |
| v. | : | Trial Court Case No. 16-CR-274 |
| | : | 16-CR-330 |
| JOSEPH SETTY | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of December, 2017.

. . . . . . . . . .

D. ANDREW WILSON., by ANDREW P. PICKERING, Atty. Reg. No. 0068770, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, 4th Floor, Springfield, Ohio 45502
     Attorney for Plaintiff-Appellee

BEN M. SWIFT, Atty. Reg. No. 0065745, P.O. Box 49637, Dayton, Ohio 45449
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Joseph Setty pled no contest in the Clark County Court of Common Pleas to endangering children, a third-degree felony, and aggravated possession of drugs, a second-degree felony. The trial court found him guilty and sentenced him to consecutive sentences of 24 months for endangering children and three years for aggravated possession of drugs, plus a $7,500 fine and court costs. Setty appeals from his conviction, challenging his sentence. For the following reasons, the trial court's judgment will be affirmed.

## I. Background and Procedural History

{¶ 2} According to the presentence investigation report, on February 1, 2016, a truant officer went to Setty's home, looking for Setty's 14-year-old daughter, who had been absent from school for a long period of time. The truant officer spoke with Setty's brother-in-law, Anthony Straight, who owned the home. Straight indicated that Setty had been "cooking" something in the basement of the home. Based on this information and observations at the home, the truant officer informed law enforcement that he believed there was a possible meth lab at the residence.

{¶ 3} Detective Collins and Sergeant Bennett of the Springfield Police Department went to the residence to investigate. They observed numerous discarded cut-open lithium batteries in the yard; according to Collins, lithium batteries are commonly used to cook methamphetamine. The discarded batteries led to a locked cellar.

{¶ 4} Inside the residence, the officers made contact with Setty's wife, Bridget, and her 14-year-old daughter. After Bridget told the officers that items used to cook methamphetamine were in the bedroom, the officers recovered from the bedroom

numerous items related to the manufacture of methamphetamine, including plastic bottles, rubber hoses, digital scales, empty boxes of nasal decongestant, and hand syringes. Three plastic bottles of clear liquid were also located in the cellar; the bottles were found to contain 214.9 grams of methamphetamine and pseudoephedrine, 116.7 grams of methamphetamine, and 119.4 grams of methamphetamine.

{¶ 5} Upon checking on Setty's purchases of pseudoephedrine on a national database (NPLEX), Detective Collins learned that since March 2015, Setty had purchased 45 packages (95.52 grams) of pseudoephedrine and was stopped from purchasing another 52 (104.88 grams) of pseudoephedrine. The detective further found that other individuals associated with Setty had made purchases of pseudoephedrine and that their purchases stopped after Setty's arrest.

{¶ 6} Subsequent interviews of the daughter by social workers revealed that the daughter had been exposed to methamphetamines. The daughter stated that her father cooked meth in his bedroom and, for the past three weeks, he had been making meth daily and sometimes twice a day. The daughter could describe how to make meth, because she had observed her father making it, and she had been exposed to the chemicals, which had made her nose burn. At one point, the daughter went to Dayton Childrens because school officials believed that she may be exhibiting symptoms of being exposed to meth.

{¶ 7} The procedural history of Setty's case is somewhat complicated. In May 2016, Setty was charged in Case No. 2016 CR 217 with illegal manufacture of a controlled substance (R.C. 2925.04), a first-degree felony; assembly or possession of chemicals used to manufacture controlled substance with intent to manufacture controlled

substance (R.C. 2925.041), a second-degree felony; and child endangerment (R.C. 2919.22(B)(6)), a third-degree felony. In June 2016, Setty was indicted in Case No. 2016 CR 274 with aggravated possession of drugs (R.C. 2925.11(A)), a first-degree felony. The two cases were consolidated.

{¶ 8} In July 2016, Setty was reindicted in Case No. 2016 CR 330 for the same three charges as in Case No. 2016 CR 217. In August 2016, the trial court severed Case Nos. 2016 CR 217 and 2016 CR 274, dismissed Case No. 2016 CR 217 (the original case), and consolidated Case No. 2016 CR 274 with Case No. 2016 CR 330 (the reindicted case). The court ordered that the aggravated possession of drugs charge (the sole count in Case No. 2016 CR 274) be referred to as Count Four of Case No. 2016 CR 330.

{¶ 9} On January 30, 2017, Setty pled no contest to aggravated possession of drugs, amended from a first-degree felony to a second-degree felony, and to endangering children, a third-degree felony. In exchange for the plea, the State agreed to dismiss the additional charges, to recommend a presentence investigation, and not to prosecute Setty's wife related to the investigation (Springfield Police Department Investigation No. 16SPD5024). The trial court found Setty guilty and ordered a PSI.

{¶ 10} The trial court conducted a sentencing hearing on February 21, 2017. The prosecutor argued that Setty was "in denial of the facts and the evidence" in this case, and the prosecutor described the knowledge and exposure Setty's daughter had regarding the manufacturing of methamphetamine. The prosecutor told the court that Setty had falsely stated to the PSI investigator that another individual was manufacturing meth, and that he (Setty) was only using the drug. The prosecutor noted that Setty

lacked a prior felony record, but asked the court to impose a prison sentence based on the facts of the case.

{¶ 11} In contrast, defense counsel argued that Setty was remorseful for letting his addiction to meth "take over his life" and for placing his wife and daughter in jeopardy. Counsel emphasized that Setty had no felony record and a "pretty minimal prior misdemeanor record," and that "the fact that he is an addict is very, very clear in this case." Speaking on his own behalf, Setty apologized to his family, particularly to his daughters (he has an older daughter, as well), and stated that addiction had taken over all of their lives.

{¶ 12} The trial court sentenced Setty to 24 months in prison for child endangering and to three years in prison for aggravated possession of drugs. In ordering the sentences to run consecutively, the trial court found, in part, that the offenses were committed as part of one or more courses of conduct and that no single prison term adequately reflected the seriousness of the conduct. The court stated:

> Making meth in your house is one thing. It puts the house in danger, puts
>
> the neighbors' homes in danger; but to have your family in the house,
>
> including a minor child while you're doing that, takes this to a whole 'nother
>
> level.

Finally, the trial court imposed the mandatory minimum fine of $7,500 and ordered Setty to pay court costs.

{¶ 13} On appeal, Setty's sole assignment of error states: "Setty's sentence is contrary to law because the trial court failed to consider the sentencing guidelines and also failed to merge his counts/convictions[.]" In his appellate brief, he articulates three

arguments: (1) his sentence is contrary to law, because the trial court failed to properly consider and apply R.C. 2929.11 and R.C. 2929.12; (2) the record does not support the trial court's findings in support of consecutive sentences; and (3) the trial court erred in failing to merge the two offenses as allied offenses of similar import. We will address Setty's arguments in an order that facilitates our analysis.

## II. Allied Offenses of Similar Import

{¶ 14} Ohio's allied offense statute, R.C. 2941.25, provides that:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 15} " 'As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.' " *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d

266, ¶ 12, quoting *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31. The Supreme Court has further explained:

> At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

*Ruff* at ¶ 26.

{¶ 16} At the outset, Setty did not object to the trial court's failure to merge his offenses as allied offenses of similar import. Accordingly, we review Setty's claim for plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3; *State v. Trigg*, 2d Dist. Montgomery No. 26757, 2016-Ohio-2752, ¶ 12. Under this review, the trial court's judgment is not reversible "unless [the error] affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *Rogers* at ¶ 3.

{¶ 17} R.C. 2919.22(B)(6), the relevant portion of the endangering children statute, provides:

> (B) No person shall do any of the following to a child under eighteen years of age * * *:
>
> (6) Allow the child to be on the same parcel of real property and within one hundred feet of * * * any act in violation of section 2925.04 [illegal manufacture of controlled substance] or 2925.041 [ assembly or possession of chemicals used to manufacture controlled substance with intent to manufacture controlled substance] of the Revised Code when the person knows that the act is occurring, whether or not any person is prosecuted for or convicted of the violation of section 2925.04 or 2925.041 of the Revised Code that is the basis of the violation of this division.

Setty was also convicted of aggravated possession of drugs, which prohibits individuals from knowingly obtaining, possessing, or using a controlled substance or controlled substance analog.   R.C. 2925.11(A).

{¶ 18} Setty argues that, in this case, the two offenses were both based on the finding that he engaged in the manufacturing of methamphetamine within 100 feet of his 14-year-old daughter.  We disagree with Setty's assertion that the two offenses were committed by the same conduct, and we find that they have different import.

{¶ 19} The offense of aggravated possession of drugs is directed to Setty's possession of methamphetamine.  In setting forth the circumstances of the offenses at the plea hearing, the prosecutor stated – and Setty agreed – that Setty "possessed three plastic bottles of clear liquid in the cellar attached to Anthony Strait's house, and the

bottles were found to contain 214.9 grams of methamphetamine and pseudoephedrine and 116.7 grams found containing methamphetamine and 119.4 grams found to contain methamphetamine." This act of possession constituted the basis for the aggravated possession of drug conviction.

{¶ 20} In contrast, Setty's conviction for endangering children was based on his manufacturing of methamphetamine and his allowing his 14-year-old daughter to be on the same property and within 100 feet of his manufacturing activities and possession of chemicals for the manufacturing of methamphetamine. The prosecutor described at the plea hearing that leaking batteries were located throughout the yard, that additional items used to cook methamphetamines were located in the bedroom, and that there were other indicia that Setty was manufacturing methamphetamine in the cellar. The prosecutor stated that Setty had allowed his minor child to be on the same parcel of real estate and within 100 feet of his manufacturing of drugs and illegal assembly and possession of chemicals for the manufacture of those drugs. Moreover, the focus of the endangering children statute is the harm to the child, not the drug offense. Accordingly, we find that Setty's conviction for endangering children was based on different conduct and had a different import than the aggravated possession of drugs conviction. *Accord State v. Salyer*, 2d Dist. Champaign No. 2013 CA 60, 2015-Ohio-2431 (illegal manufacture of drugs (methamphetamine) and endangering children (R.C. 2919.22(B)(6)) were committed by separate conduct and did not merge).

### III. Setty's Individual Sentences

{¶ 21} Setty next claims that his individual sentences are contrary to law, because the trial court failed to properly consider and apply R.C. 2929.11 and R.C. 2929.12. Setty

asserts that he should have received "probation for the Endangering charge and the minimum sentence of two (2) years for Agg. Possession of Drugs."

**{¶ 22}** In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

**{¶ 23}** "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory criteria that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

**{¶ 24}** R.C. 2929.11 requires trial courts to be guided by the overriding purposes of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public,

or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 25} R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense; R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record. (Setty did not serve in the military.)

{¶ 26} At the outset, the trial court was required to impose a prison term for both aggravated possession of drugs and endangering children, and this fact was reflected on Setty's plea form. Setty pled to aggravated possession of drugs (methamphetamine) in an amount equal to or exceeding five times the bulk amount, but less than fifty times the bulk amount, a felony of the second degree. Accordingly, the trial court was required to impose "as a mandatory prison term one of the prison terms prescribed for a felony of the second degree." R.C. 2925.11(C)(1)(c). The possible prison terms for a second-degree felony are two, three, four, five, six, seven, or eight years. R.C. 2929.14(A)(2).

{¶ 27} In addition, R.C. 2919.22(E)(3) provides, in relevant part:

If the offender violates division (B)(6) of this section and the drug involved is methamphetamine, the court shall impose a mandatory prison term on

the offender as follows:

(a) If the violation is a violation of division (B)(6) of this section that is a felony of the third degree under division (E)(3) of this section and the drug involved is methamphetamine, except as otherwise provided in this division, *the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree that is not less than two years.* * * *.

(Emphasis added.) For third-degree felony offenses not listed in R.C. 2929.14(A)(3)(a), the possible prison term is generally nine, twelve, eighteen, twenty-four, thirty, or thirty-six months. R.C. 2929.14(A)(3)(b).

{¶ 28} In imposing sentence, the trial court stated that it had considered the facts presented at the time of the plea and the PSI, and that it applied those facts to the statutory factors in R.C. 2929.12; the trial court commented on R.C. 2929.12(C) and (D). The court also noted that mandatory sentences were required, and it imposed 24 months in prison for child endangering and three years in prison for aggravated possession of drugs. In other words, Setty received the minimum sentence for endangering children and close to the minimum sentence for aggravated possession of drugs. Upon review of the record, the trial court's sentences are not clearly and unconvincingly unsupported by the record.

### IV. Imposition of Consecutive Sentences

{¶ 29} Setty further claims that the trial court's findings in support of consecutive sentencing are clearly and convincingly unsupported by the record.

{¶ 30} After determining the sentence for a particular crime, a sentencing judge

has discretion to order an offender to serve individual counts of a sentence consecutively to each other or to sentences imposed by other courts. Pursuant to R.C. 2929.14(C)(4), a trial court may impose consecutive sentences if it determines that: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings are satisfied:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 31} In imposing consecutive sentences, the trial court must make the statutory findings and incorporate them into its sentencing entry, but the trial court is not required to state reasons to support its findings. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

**{¶ 32}** In imposing consecutive sentences, the trial court made the required statutory findings, using the language of R.C. 2929.14(C)(4). The court found that "consecutive sentencing is necessary to protect the public from future crime and to punish the Defendant, and that the consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger that he poses to the public." The court further found that "these two multiple offenses were committed as part of one or more courses of conduct and the harm caused by the two or more multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed during this course of conduct adequately reflects the seriousness of his conduct."

**{¶ 33}** Setty points out that the trial court imposed consecutive sentences, stating that "to have your family in the house, including a minor child while you're doing that [making meth], takes this to a whole 'nother level." Setty argues that the fact that his daughter was in the home was already considered and received its own punishment under the endangering children charge.

**{¶ 34}** Considering the facts underlying both offenses, which are discussed extensively in the PSI, we cannot find that the trial court's findings are clearly and convincingly unsupported by the record. For example, the record reflects that Setty not only possessed and manufactured methamphetamine within 100 feet of his daughter, but he did so to the extent that his daughter was able to describe, in great detail, how to make meth. In addition, the PSI indicates that Setty would use battery acid, Drano, and ammonia, and would place them in 20 ounce plastic bottles; Setty then put the bottles in the sink of the bathroom that his daughter used. His daughter indicated that she could

smell the chemicals, which were strong, and they would burn her nose.   Considering all of the information before us, Setty's consecutive sentencing argument is without merit.

{¶ 35} Setty's assignment of error is overruled.

## V. Conclusion

{¶ 36} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .


HALL, P. J. and DONOVAN, J., concur.


Copies mailed to:

D. Andrew Wilson
Andrew P. Pickering
Ben M. Swift
Hon. Richard J. O'Neill