[Cite as *State v. Cole*, 2019-Ohio-5425.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                    Court of Appeals No. E-18-061

      Appellee                             Trial Court No. 2018CR001

v.

Dameun Cole                            **DECISION AND JUDGMENT**

      Appellant                            Decided:   December 31, 2019

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Anthony A. Battista III, Assistant Prosecuting Attorney,
for appellee.

Loretta Riddle, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Defendant-appellant, Dameun Cole, appeals the November 9, 2018

judgment of the Erie County Court of Common Pleas, convicting him of four counts of

gross sexual imposition and sentencing him to a total prison term of nine-and-a-half years. For the reasons that follow, we affirm.

## I. Background

{¶ 2} Dameun Cole was indicted on January 18, 2018, on four counts of rape under R.C. 2907.02(A)(2) and (B) (Counts 1-3, and 7); three counts of sexual battery under R.C. 2907.03(A)(5) and (B) (Counts 4, 8, and 9); one count of gross sexual imposition under R.C. 2907.05(A)(4) and (C)(2) (Count 5); and one count of rape of a person under the age of 13 under R.C. 2907.02(A)(1)(b) and (B) (Count 6). These charges stemmed from Cole's sexual abuse of his stepdaughters, C.W. and T.W., then ages 14 and 16.

{¶ 3} According to the information contained in the record, the girls approached a guidance counselor at school to report that Cole was sexually abusing them. The guidance counselor alerted the school's resource officer and Erie County Children's Services (ECCS), and the resource officer notified a detective with the Sandusky Police Department. The girls were interviewed by ECCS representatives and Detective Kenneth Nixon.

{¶ 4} T.W. reported that Cole began abusing her in October or November of 2012. It began by Cole suggesting to T.W. that they make a deal: if T.W. would do "favors" for Cole, he would give her whatever she wanted. T.W. believed that she would be performing chores in exchange for "get[ting] things," but soon learned that Cole intended for her to perform sexually-related favors. Initially, Cole masturbated in front of T.W. It later progressed to Cole demanding that T.W. perform oral sex on him, and eventually,

2.

Cole attempted to have vaginal sex with T.W., but was unsuccessful. T.W. reported that Cole performed oral sex on her and penetrated her vagina with his fingers.

{¶ 5} T.W. explained that Cole would usually text her to initiate sexual contact with her. The texts usually began with him asking her "what's up?", to which T.W. would respond "I'm in" or "I'm out." T.W. showed the ECCS workers and Detective Nixon some of the text messages between them for various dates in 2017. Those messages corroborated what T.W. had reported.

{¶ 6} C.W. also spoke with ECCS and Detective Nixon. C.W. said that several years earlier, Cole began asking her to send him photos of her "privates." C.W. sent him pictures of her vagina. Starting in mid-2015, he began masturbating in front of her. In early 2017, he attempted to have sex with her, but she was a virgin and it hurt. He tried a second time and successfully penetrated her vagina. C.W. said that when she had intercourse with Cole, she would cry, but he did not notice. She said that the last time she had intercourse with Cole was on his birthday, December 12, 2017. She also performed oral sex on him on that date. C.W. showed ECCS and Detective Nixon a text message from December 12, 2017, consistent with what she had reported.

{¶ 7} C.W. also told ECCS and Detective Nixon that Cole gave her a sexually transmitted disease—Trichomoniasis—three times. Medical records obtained by ECCS corroborated that in February, April, and November of 2017, C.W. was treated for the STD at Firelands Hospital's emergency room. C.W. told ECCS and Detective Nixon that she asked her sister to report what was happening to them or it would never stop.

3.

{¶ 8} Detective Nixon interviewed Cole. Cole denied raping the girls. He was asked about the text messages that the girls showed Detective Nixon. Cole claimed that another individual had the ability to access the messaging applications on his phone, but he acknowledged that some of the text messages "happened." As to one text message in particular where Cole requested oral sex from C.W., he stated that "wanting and getting are two different things." He also said that he "never got as far as to be able to penetrate them." He explained that whenever it was about to happen, there was an excuse on both sides.

{¶ 9} Cole ultimately entered a plea of guilty to Counts 1-3, amended to gross sexual imposition under R.C. 2907.05(A)(1), and Count 5. The state entered a nolle prosequi as to Counts 4 and 6-9. The trial court found Cole guilty. It ordered a pre-sentence investigation report and continued the matter for sentencing.

{¶ 10} The day before he was scheduled to be sentenced, Cole submitted a sentencing memorandum arguing that his convictions of the first three counts should be merged for purposes of sentencing because "the possibility exists that the convictions resulting from Counts 1, 2, and 3 resulted from the same instance of conduct." He claimed that while the indictment indicated that Counts 1-3 occurred sometime between January 1, 2017, and December 15, 2017, the judgment entry for his guilty plea listed no particular dates that the crimes were committed. He argued that even though the indictment listed a range of dates, the first three counts of the indictment did not list "separate, mutually exclusive dates" or "separate, mutually exclusive ranges of dates" to suggest that there had been multiple incidents. He insisted that there was nothing before

4.

the court "definitively suggesting" that Counts 1-3 resulted from three separate incidents, and there exists a "distinct possibility" that they resulted from the same act. Alternatively, Cole asked that concurrent sentences be imposed.

{¶ 11} The state's attorney received Cole's motion at the hearing. Although the state did not file a written response, it argued that Cole was indicted on multiple counts for multiple occurrences that took place over a one-year time period. The state's attorney explained that when multiple instances of abuse occur, it is sometimes difficult for young children "to nail down exactly what dates those happen[ed] on, which is why [they] give a range of dates," and, in fact, her understanding was that there were more than just three instances of abuse in this case.[1] She emphasized that it was understood and written into the plea agreement that Cole could potentially be imprisoned for nine-and-a-half years— not that the counts were subject to merger.

{¶ 12} The trial court rejected Cole's merger argument. It informed the parties that it was well aware of the facts of the case from its review of the PSI, police reports, and the records submitted in support of an earlier motion to suppress evidence of Cole's interview with Detective Nixon. The court disagreed that the first three counts arose from only one event. It specifically referenced dates that text messages were sent and how those messages corresponded with allegations of sexual conduct. It also noted that in his statement, Cole conceded that multiple acts had occurred when he denied penetrating the girls because "every time" he had the chance, the girls' mother would

---

[1] The state's attorney who appeared at sentencing was not the same attorney who had been handling the case.

come home or would wake up. And it observed that C.W. had contracted an STD from Cole three separate times and sought medical treatment on each occasion.

{¶ 13} The court sentenced Cole to 18 months' imprisonment on Counts 1-3, and 60 months on Count 5, all to be served consecutively, for a total term of imprisonment of nine years, six months. The court imposed a mandatory period of post-release control as to each count.

{¶ 14} Cole appealed and assigns the following errors for our review:

ASSIGNMENT OF ERROR NO. I

The trial court erred when it failed to merge counts 1-3.

ASSIGNMENT OF ERROR NO. II

The trial court erred when it sentenced Appellant to maximum sentences on each count.

## II. Law and Analysis

{¶ 15} Cole claims in his first assignment of error that Counts 1-3 should have merged for sentencing purposes. In his second assignment of error, he argues that the court's findings do not support the imposition of maximum sentences. We consider each of Cole's assignments in turn.

## A. Merger

{¶ 16} In his first assignment of error, Cole argues that the trial court erred by failing to merge Counts 1-3 at sentencing. He argues that "[b]ased on the wording in the indictment for Count 1, 2, and 3, it appears they resulted from the same instance of conduct in that each is identical and there is no language distinguishing them as separate

6.

instances." Additionally, although not argued in the trial court, Cole argues that while the indictment contained a range of dates during which he allegedly abused his stepdaughters, the state provided a bill of particulars identifying only one date: January 1, 2017. He insists that in doing so, the state put him on notice that it was no longer alleging a date range, but rather was identifying one specific date. This, he claims, supports his position that Counts 1-3 encompass "the same act, which occurred at the same time and involved the same victim" with no separate animus.

{¶ 17} The state responds, first, that Cole relies on outdated case law in support of his merger argument. It maintains that the record reflects separate and distinct acts, committed separately, with separate animus, dissimilar import, and separate and identifiable harm. The state also claims that Cole waived any defects in the dates of the offenses to which he entered a plea of guilty. It insists that Cole understood that by entering a plea of guilty, he was admitting to the evidentiary or factual basis of the charges.

{¶ 18} The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution, applicable to the state through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10. The Double Jeopardy Clause protects against a number of abuses. *Id.* Pertinent to this case is the protection against multiple punishments for the same offense. *Id.* To that end, the General Assembly enacted R.C. 2941.25, which directs when multiple punishments may

7.

be imposed.  *Id.*  It prohibits multiple convictions for allied offenses of similar import arising out of the same conduct:

> (A)  Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B)  Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 19} In *Ruff*, the Ohio Supreme Court examined in detail the analysis that must be performed in determining whether offenses are allied offenses of similar import under R.C. 2941.25.  It identified three questions that must be asked:  "(1) Were the offenses dissimilar in import or significance?  (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?"  *Id.* at ¶ 31.  If the answer to any of these questions is "yes," the defendant may be convicted and sentenced for multiple offenses.  *Id.* at ¶ 25, 30.  The court explained that offenses are of *dissimilar* import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable."  *Id.* at ¶ 23.  It emphasized that the analysis must focus on the defendant's conduct, rather than simply compare the elements of two offenses.  *Id.* at ¶ 30.

8.

{¶ 20} "Intimate sexual contacts with a victim that constitute the offense of gross sexual imposition may be treated as separate offenses for the purposes of R.C. § 2941.25(B) in at least two instances: (1) where the evidence demonstrates either the passage of time or intervening conduct by the defendant between each incident; and (2) where the evidence demonstrates the defendant's touching of two different areas of the victim's body occurred in an interrupted sequence." *State v. DeGarmo*, 5th Dist. Muskingum No. CT2018-0061, 2019-Ohio-4050, ¶ 26. *See also State v. Hall*, 6th Dist. Lucas No. L-17-1069, 2018-Ohio-619, ¶ 10 ("The law in Ohio is clear that multiple separate and distinct acts of penetration will support multiple convictions and sentences, and oral, anal, and vaginal rapes constitute separate and distinct acts."). Accordingly, if Cole committed acts separated by the passage of time or engaged in sexual contact involving more than one erogenous zone, even if in one brief episode, each instance may form the basis for separate counts and are not allied offenses. *See State v. Morgan*, 9th Dist. Medina No. 07CA0124-M, 2008-Ohio-5530, ¶ 14.

{¶ 21} Even interpreting the notes from C.W.'s interview very narrowly, those notes describe *at least* three distinct acts supporting three separate counts of gross sexual imposition: (1) an incident that occurred at the beginning of 2017, where Cole tried to have intercourse with C.W. (who was then a virgin), Cole gave up, C.W. went upstairs, Cole told her to come back downstairs, and Cole succeeded in penetrating C.W. after trying to have intercourse with her a second time; and (2) an incident that occurred on December 12, 2017 (Cole's birthday), where Cole forced C.W. to engage in oral sex with him, followed by vaginal intercourse. Even without additional details, these two

9.

incidents describe three—or more likely four—separate and distinct acts of gross sexual imposition (the amended charge).

{¶ 22} Although Cole argued in the trial court "that it was possible" that all three counts resulted from the same act, his argument on appeal is different. On appeal, he argues that his sentences for the three counts must merge because unlike the indictment, where a *range* of dates was specified, the bill of particulars identified only *one* date on which the incident occurred—January 1, 2017. Moreover, he claims, "the record is devoid of any mentioning [sic] of any criminal activity occurring on that date." The issue, therefore, is whether, by identifying only one date, the bill of particulars is "proof" that Counts 1-3 arose "from the same act, which occurred at the same time and involved the same victim."

{¶ 23} Counts 1-3 of the indictment, which all relate to Cole's abuse of C.W., are worded identically. They state:

> That Dameun L. Cole, on or about 1/1/2017 through 12/15/2017, at Erie County, Ohio did engage in sexual conduct with C.W. (DOB * * *) when Dameun L. Cole purposely compelled her to submit by force or threat of force.
>
> In violation of the Ohio Revised Code Section 2907.02(A)(2), 2907.02(B) and against the peace and dignity of the State of Ohio.

{¶ 24} The bill of particulars for these counts is also worded identically. It states:

> That on or about 1/1/2017, and at the location of Erie Co., Sandusky, OH 44870, Erie County, the Defendant, Dameun L. Cole, did engage in

sexual conduct with C.W. (DOB * * *) when Dameun L. Cole purposely compelled her to submit by force or threat of force contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

{¶ 25} "The purpose of the bill of particulars is to inform a defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to prevent surprise, or to plead his acquittal or conviction in bar of another prosecution for the same offense." *State v. Rivers*, 8th Dist. Cuyahoga No. 83321, 2004-Ohio-2566, ¶ 15. The bill of particulars is not a mechanism for discovering the state's evidence and is not to be used as a substitute for discovery. *State v. Stepp*, 117 Ohio App.3d 561, 565, 690 N.E.2d 1342 (4th Dist.1997). Once an accused, represented by counsel, enters a plea of guilty, "the need for a bill of particulars no longer exists." *Foutty v. Maxwell*, 174 Ohio St. 35, 38, 186 N.E.2d 623, 626 (1962).

{¶ 26} In *In re C.C.*, 8th Dist. Cuyahoga No. 88320, 2007-Ohio-2226, ¶ 24, the court found no error where the trial court allowed trial to proceed as to an offense that took place on November 1, 2004, even though the bill of particulars identified the date of the incident as November 30, 2004. In affirming the trial-court judgment, the court reasoned that "although the Bill of Particulars indicated the incorrect date of November 30, 2004, police reports provided to appellant's trial counsel and admitted into evidence by the defense contained the correct date of November 1, 2004," therefore, the defendant had been provided adequate notice to prepare a defense. *Id.* at ¶ 23. Additionally, Ohio courts recognize that "[a] defendant who enters a plea of guilty waives the right to appeal

11.

all nonjurisdictional issues arising at prior stages of the proceedings," including "any error related to a defect in the Bill of Particulars * * *." *State v. Bogan*, 8th Dist. Cuyahoga No. 84468, 2005-Ohio-3412, ¶ 25.

{¶ 27} Here, the record makes clear that the police reports were provided to Cole in discovery on February 2, 2018, and those reports reference sexual abuse that took place repeatedly during 2017, from the beginning of the year through Cole's December birthday. Moreover, Cole entered a plea to Counts 1-3, therefore, he admitted guilt as to every material fact in the indictment and waived any defect in the bill of particulars. *State v. Davis,* 2d Dist. Clark No. 2018-CA-49, 2019-Ohio-1904, ¶ 66.

{¶ 28} Finally, although not pointed out by the state, we also note that the plea hearing began by the state advising the court that Cole would be entering pleas to Count 1, 2, 3, and 5. The state then specifically stated: "Counts 1, 2 ,and 3 are all the same charge, *but different incidents*, Gross Sexual Imposition, Ohio Revised Code Section 2907.05(A)(1), all felonies of the fourth degree." (Emphasis added.) Cole was aware, therefore, that Counts 1-3 were premised on multiple incidents of sexual abuse, despite the date listed in the bill of particulars.

{¶ 29} Accordingly, we conclude that Counts 1-3 were not allied offenses subject to merger. We find Cole's first assignment of error not well-taken.

## B. Sentence

{¶ 30} In his second assignment of error, Cole argues that the trial court erred when it sentenced him to the maximum sentence on each count. He argues that while the

trial court stated on the record its findings and reasons for imposing the maximum sentence, those findings and reasons do not support the sentence and they demonstrate that the court failed to consider all factors required under R.C. 2929.12. He insists that he "did not commit the worst form of the offense as Counts 1-3 as indicted were rape and he plead [sic] to gross sexual imposition." He also maintains that he "did not have any convictions of a sexual nature prior to the charges he pled to" and "had things happen in his childhood which * * * helps [sic] to explain his actions."

{¶ 31} The state responds that (1) Cole's sentence was within the permissible statutory range, and, therefore, not contrary to law; (2) the court was not required to state its findings under R.C. 2929.12; and (3) while not required to state its reasons for imposing a sentence within the statutorily-permissible range, the trial court did so anyway and its reasons support Cole's sentence.

{¶ 32} We review a challenge to a felony sentence under R.C. 2953.08(G)(2). R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, or otherwise modify a sentence or may vacate the sentence and remand the matter to the sentencing court for resentencing if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶ 33} In *State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio- 425, ¶ 15, we recognized that *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, provides guidance in determining whether a sentence is clearly and convincingly contrary to law for purposes of R.C. 2953.08(G)(2)(b). In *Kalish*, the Ohio Supreme Court held that where the trial court expressly states that it considered the purposes and principles of sentencing in R.C. 2929.11 and the seriousness and recidivism factors listed in R.C. 2929.12, properly applies post-release control, and sentences the defendant within the statutorily-permissible range, the sentence is not clearly and convincingly contrary to law. *Kalish* at ¶ 18.

{¶ 34} Cole concedes that "the trial court stated on the record the findings and reasons required by statute for its maximum sentencing," but maintains that those findings and reasons do not support a maximum sentence. As we recognized in *State v. Johnston*, 6th Dist. Wood No. WD-18-069, 2019-Ohio-3127, ¶ 13, R.C. 2929.14(C) previously provided that a maximum sentence could be imposed only upon offenders who committed the worst form of the offense, offenders who pose the greatest likelihood of committing future crimes, and certain repeat violent offenders. This language was deleted from the statute in 2011. Sentencing courts are no longer required to explain its reasons for imposing a maximum sentence. *State v. Pippin*, 6th Dist. Lucas No. L-18-1023, 2019-Ohio-1387, ¶ 17.

{¶ 35} A sentencing court is also not required "to use language or make specific findings to demonstrate that it considered the applicable sentencing criteria under" R.C.

14.

2929.12. *State v. Green*, 6th Dist. Lucas No. L-18-1065, 2019-Ohio-1816, ¶ 10. A trial court's statement that it considered R.C. 2929.12 is sufficient. *State v. Harris*, 6th Dist. Wood No. WD-18-077, 2019-Ohio-4711, ¶ 8. In fact, even where the court fails to specifically state that it considered R.C. 2929.12, we will presume that it did. *Id.*

{¶ 36} Under R.C. 2929.12, the court must consider factors relating to the seriousness of the conduct, factors relating to the likelihood of recidivism, and factors pertaining to the offender's service in the armed forces of the United States, if applicable, along with any other factors relevant to achieving the purposes and principles of sentencing. R.C. 2929.12(A).

{¶ 37} Relating to the seriousness of the offense, the court must consider factors indicating that the offender's conduct is more serious than conduct normally constituting the offense, such as the physical or mental injury suffered by the victim because of the physical or mental condition or age of the victim; whether the victim suffered serious physical, psychological, or economic harm as a result of the offense; and whether the offender's relationship with the victim facilitated the offense. It must also consider factors indicating that the offender's conduct is less serious than conduct normally constituting the offense, including whether the victim induced or facilitated the offense; whether in committing the offense, the offender acted under strong provocation; whether in committing the offense, the offender did not cause or expect to cause physical harm to any person or property; and whether there are substantial grounds to mitigate the offender's conduct. R.C. 2929.12(B) and (C).

15.

{¶ 38} Relating to the likelihood of recidivism, the court must consider factors indicating that the offender is likely to commit future crimes, such as whether the offender has a history of criminal convictions; whether the offender has not responded favorably to sanctions previously imposed for criminal convictions; and whether the offender shows no genuine remorse for the offense. It also must consider factors indicating that the offender is not likely to commit future crimes, including whether, prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense; whether prior to committing the offense, the offender had led a law-abiding life for a significant number of years; whether the offense was committed under circumstances not likely to recur; and whether the offender shows genuine remorse for the offense. R.C. 2929.12(D) and (E).

{¶ 39} Here, the trial court specifically stated in its sentencing entry that it considered R.C. 2929.12, and the record supports the court's findings. Specifically, the court went over Cole's lengthy criminal record and the sanctions imposed for those offenses. The court observed that Cole had been dishonest with investigators and attempted to blame the victims for his misconduct. It emphasized that Cole gave one of his young victims a sexually-transmitted disease, resulting in physical harm; the victims suffered mental injury from the sustained abuse they experienced; and Cole manipulated his victims and exerted control over them. While the court acknowledged that Cole had been abused as a child, it expressed dismay that Cole had chosen to hurt others instead of seeking help for himself. The court's statements make clear that it considered the factors enumerated in R.C. 2929.12. And although Cole may disagree with the court's balancing

of those factors, "it is the role of the trial court to determine the weight afforded to any particular statutory factors, mitigating grounds, or other relevant circumstances." *State v. Day*, 4th Dist. Adams No. 19CA1085, 2019-Ohio-4816, ¶ 19.

{¶ 40} Accordingly, we conclude that the trial court did, in fact, consider R.C. 2929.12, and the record supports its findings. The court's findings and the sentences it imposed are neither unsupported nor contrary to law. We find Cole's second assignment of error not well-taken.

### III. Conclusion

{¶ 41} Counts 1-3 do not constitute allied offenses subject to merger, despite the fact that the bill of particulars incorrectly listed only one date of offense. The police reports, provided to counsel during discovery, made clear that the charges against Cole arose out of ongoing conduct spanning a year. And when Cole entered a plea of guilty, he admitted all the material allegations of the indictment. We find Cole's first assignment of error not well-taken.

{¶ 42} The trial court did not err in imposing maximum sentences as to each count. As required by R.C. 2929.12, the court considered factors relating to the seriousness of Cole's conduct and factors relating to his likelihood of recidivism. Although Cole may disagree with the court's balancing of those factors, this is not a basis to reverse. We find Cole's second assignment of error not well-taken.

{¶ 43} We affirm the November 9, 2018 judgment of the Erie County Court of Common Pleas. Cole is responsible for the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                          _____
                                                                    JUDGE

Christine E. Mayle, P.J.

                                                      _____
Gene A. Zmuda, J.                                            JUDGE
CONCUR.

                                                      _____
                                                                    JUDGE


---

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.