[Cite as *State v. Sims*, 2024-Ohio-250.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                No. 112671

    v.                                 :

DEVIN SIMS,                             :

    Defendant-Appellant.        :

**JOURNAL ENTRY AND OPINION**

**JUDGMENT:** AFFIRMED IN PART; VACATED IN PART;
AND REMANDED
**RELEASED AND JOURNALIZED:** January 25, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-661303-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christine Vacha, Assistant Prosecuting Attorney, *for appellee.*

Scott J. Friedman, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Devin Sims ("Sims"), appeals from his convictions and sentence following a jury trial. Sims raises the following assignments of error for review:

1.    The appellant's conviction for three counts of gross sexual imposition was not supported by sufficient evidence.

2.    The appellant's conviction for three counts of gross sexual imposition was against the manifest weight of the evidence.

3.    The trial court erred when it failed to merge the gross sexual imposition charges.

{¶ 2} After careful review of the record and relevant case law, we affirm in part, vacate in part, and remand the matter for the trial court to implement the judgment of this court.

## I. Procedural and Factual History

{¶ 3} On July 15, 2021, Sims was named in a seven-count indictment, charging him with three counts of gross sexual imposition in violation of R.C. 2907.05(A)(4) (Counts 1, 2, and 4); and single counts of attempted gross sexual imposition in violation of R.C. 2923.02 and 2907.05(A)(4) (Count 3); importuning in violation of R.C. 2907.07(A) (Count 5); public indecency in violation of R.C. 2907.09(A)(1) (Count 6); and endangering children in violation of R.C. 2919.22(B)(1) (Count 7).  The indictment stemmed from allegations that Sims engaged in inappropriate sexual contact with the alleged victim, Child Victim (d.o.b. 10/26/2009).

{¶ 4} On March 23, 2023, the matter proceeded to a jury trial, where the following relevant facts were adduced.

{¶ 5} The Child Victim was 13 years old at the time of trial.  In 2020, when she was 10 years old, the Child Victim was living with her grandfather on a full-time basis and rarely spent time with her biological mother ("Mother").  In September

2020, however, the Child Victim and her siblings were required to stay at Mother's apartment to attend a family member's funeral the following day. Sims, who was dating Mother at the time, was present in the apartment during the sleepover.

{¶ 6} The Child Victim testified that on the night of the incident, she stayed up late to watch videos on the living room couch while her brothers were asleep on a nearby mattress. At approximately 3:00 a.m., Sims came into the living room wearing nothing but a coat and asked the Child Victim if she would try on the coat to "see if it would fit." (Tr. 244-245.) Sims then took the coat off and handed it to the Child Victim. Confused, the Child Victim complied with Sim's request. Following this interaction, Sims left the living room and the Child Victim continued watching videos on her electronic tablet.

{¶ 7} Shortly thereafter, Sims returned to the living room a second time. This time, Sims was completely nude. The Child Victim testified that Sims briefly asked her about the videos she was watching before leaving the living room.

{¶ 8} Sims later returned to the living room a third time. On this occasion, Sims laid next to the Child Victim on the couch and placed his penis on her arm. (Tr. 247-248.) Sims asked the Child Victim whether she could "keep a secret," and she responded "no." (Tr. 247.) Undeterred, Sims stated "don't tell nobody." (Tr. 247.) He then took the Child Victim's hand and attempted to place it on his penis, but the Child Victim resisted. "Hoping [Sims] would leave," the Child Victim turned her tablet off and fell asleep. (Tr. 248.)

**{¶ 9}** A short time later, Sims awoke the Child Victim by lifting the blanket she was sleeping with on the couch. The Child Victim testified that she then felt Sims's "private part" touch her "butt." (Tr. 249.) In response to this conduct, the Child Victim moved her body away from Sims. Sims then left the room, and the Child Victim "finally [went] to sleep." (Tr. 250.) The Child Victim estimated that Sims was in the room for approximately one or two minutes before the inappropriate touching occurred. The Child Victim testified that she did not immediately run to her mother's bedroom because she was "scared" and "didn't know what to do." (Tr. 249.)

**{¶ 10}** Approximately two days after the sleepover, the Child Victim reported Sims's conduct to her aunt and grandfather. The police were contacted, and the Child Victim provided a statement to two responding officers. The Child Victim was then taken to the hospital for a medical evaluation.

**{¶ 11}** Tina Funfgeld ("Funfgeld"), a sex-abuse intake social worker employed by the Cuyahoga County Division of Children and Family Services ("CCDCFS"), testified that she conducted a forensic interview of the Child Victim in September 2020. Funfgeld summarized the information gathered from the interview as follows:

> [The Child Victim] disclosed to me that during a visit at her mother's home that her mother's — I don't remember if it was mother's cousin or boyfriend at the time, had entered the room on a couple different occasions and at one point in time placed his penis on her arm and another time he had gotten on top of her and placed his penis on top of her clothes into her rectum, moved up and down. He had left at that point, came back and did it, and then left again.

(Tr. 298-299.) The written summary of the interview, marked state's exhibit No. 11, reflects that the Child Victim identified Sims as the perpetrator by name and provided a brief description of his appearance on the night of the incident. Based on the nature of the allegations, CCDCFS made referrals for the Child Victim to engage in further counseling services.

{¶ 12} Kathleen Hackett ("Nurse Hackett") testified that she is employed as a Sexual Assault Nurse Examiner at UH Rainbow Babies and Children's Hospital. In September 2020, Nurse Hackett examined the Child Victim and completed a sexual-assault kit. During the examination, the Child Victim reported that "Devin," her mother's "cousin or boyfriend," touched her arm with his private part, attempted to make her touch his private part with her hand, and touched her butt with his private part. (Tr. 324.) The Child Victim did not report any instances of penetration and stated that she was wearing her pajamas during the entirety of the incident. The pajamas were later recovered for forensic analysis.

{¶ 13} Hristina Lekova ("Lekova"), a DNA expert from the Cuyahoga County Regional Scientific Laboratory, testified that she performed forensic testing on several items contained in the sexual-assault kit, including a vaginal swab, an anal swab, a swab of a dried stain discovered on the Child Victim's "left-front upper arm," and the pajama pants worn by the Child Victim on the night of the incident. (Tr. 370-371.) In relevant part, Lekova testified that the DNA profile recovered from the pajama pants was a mixture, meaning "that [the] profile contains DNA from more than one individual." (Tr. 372.) Lekova stated that there was a match between

the DNA recovered from the pajamas and a buccal swab taken from Sims during the police investigation. Lekova explained that "this matches 320 septillion more probable in African-American person, 2.21 nonillion times more probable in unrelated Caucasian person, and 1.73 nonillion times more probable than Hispanic person." (Tr. 374.) Thus, Lekova concluded, to a degree of scientific certainty, that "one of the contributors in this mixture is DNA from Devin Sims." (Tr. 374.) Lekova further testified that the amount of DNA obtained from the exterior of the pajama pants was consistent with a "primary transfer." (Tr. 375.)

{¶ 14} Detective Joseph Edwards ("Det. Edwards") of the Cleveland Police Department, testified that he was assigned to investigate the allegations of sexual abuse in this matter. In the course of his investigation, Det. Edwards familiarized himself with the police report, coordinated the forensic interview with CCDCFS, reviewed the narrative report completed by Nurse Hackett, and gathered physical evidence for forensic evaluation. Subsequently, Det. Edwards completed an interview with Sims and obtained his consent to retrieve a buccal swab for DNA analysis. Det. Edwards confirmed that Sims was living with Child Victim's mother in her apartment at the time of the incident. Once the DNA analysis was completed, Det. Edwards presented the matter to the prosecutor's office and grand jury proceedings were initiated.

{¶ 15} At the close of the state's case-in-chief, defense counsel made an oral motion for acquittal pursuant to Crim.R. 29. Following a brief discussion on the record, the state agreed to dismiss the offense of attempted gross sexual imposition

as charged in Count 3 of the indictment. The motion for acquittal was denied as to all remaining counts. The defense rested without presenting any evidence, and its renewed motion for acquittal was denied.

{¶ 16} Following deliberations, the jury found Sims guilty of gross sexual imposition, importuning, public indecency, and child endangering as charged in Counts 1, 2, 4, 5, 6, and 7. Sims was sentenced to an aggregate prison term of 30 months in prison. He was classified as a Tier II sex offender as to Counts 1, 2, and 4; and a Tier I sex offender as to Count 5.

{¶ 17} Sims now appeals from his convictions and sentence.

## II. Law and Analysis

### A. Sufficiency and Manifest Weight of the Evidence

{¶ 18} In the first and second assignments of error, Sims argues his convictions for gross sexual imposition are not supported by sufficient evidence and are against the manifest weight of the evidence. Collectively, Sims contends that he was erroneously convicted of three counts of gross sexual imposition where the victim only described two acts of sexual contact. We address the first and second assignments of error together for ease of discussion.

### 1. Standards of Review

{¶ 19} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would sustain a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The relevant

inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 20} "'Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value.'" *State v. Rodano*, 2017-Ohio-1034, 86 N.E.3d 1032, ¶ 35 (8th Dist.), quoting *State v. Zadar*, 8th Dist. Cuyahoga No. 94698, 2011-Ohio-1060, ¶ 18. Although circumstantial evidence and direct evidence have obvious differences, those differences are irrelevant to the probative value of the evidence, and circumstantial evidence carries the same weight as direct evidence. *Id.*, citing *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Further, circumstantial evidence is not only sufficient, "'"but may also be more certain, satisfying, and persuasive than direct evidence.'"" *Id.* at ¶ 36, quoting *State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

{¶ 21} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Armstrong*, 8th Dist. Cuyahoga No. 109709, 2021-Ohio-1087, ¶ 24. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the appellate court functions as a "thirteenth juror" and may disagree "with the

factfinder's resolution of * * * conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).  The appellate court examines the entire record, weighs the evidence and all reasonable inferences that may be drawn therefrom, considers the witnesses' credibility and determines whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'"  *Id.*, quoting *Martin* at 175.

{¶ 22} A trier of fact is free to believe all, some, or none of the testimony of each witness testifying at trial.  *State v. Jones*, 8th Dist. Cuyahoga No. 108371, 2020-Ohio-3367, ¶ 85; *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 100.  Thus, "[a] conviction is not against the manifest weight of the evidence simply because the jury believed the testimony of the state's witnesses and disbelieved the defendant."  *Id.*

### 2. Gross Sexual Imposition

{¶ 23} In this case, Sims was convicted on three counts of gross-sexual imposition in violation of R.C. 2907.05(A)(4).[1]  The statute provides, in relevant part:

---

[1] Sims does not challenge his convictions for importuning, public indecency, or endangering children.  Accordingly, we limit our review to the gross sexual imposition offenses charged in Counts 1, 2, and 4 of the indictment.

No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

* * *

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶ 24} As applicable to each conviction, R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." The Ohio Revised Code does not define "sexual arousal" or "sexual gratification." However, R.C. 2907.01(B) "'contemplate[s] any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying.'" *State v. Tate*, 8th Dist. Cuyahoga No. 98221, 2013-Ohio-370, ¶ 18, quoting *State v. Astley*, 36 Ohio App.3d 247, 250, 523 N.E.2d 322 (10th Dist.1987); *see also In re Anderson*, 116 Ohio App.3d 441, 443, 688 N.E.2d 545 (12th Dist.1996). This court has recognized that

> [i]n determining whether sexual contact occurred, the trier of fact may infer from the evidence presented at trial whether the defendant's contact with the areas of the body outlined in R.C. 2907.01 was for the purpose of sexual arousal or gratification. *Tate* at ¶ 19; *State v. Cobb*, 81 Ohio App.3d 179, 185, 610 N.E.2d 1009 (9th Dist.1991). The purpose of the contact may be inferred from the type, nature, and circumstances of the contact. *Tate* at ¶ 20, citing [*State v. Meredith*, 12th Dist. Warren No. CA2004-06-062, 2005-Ohio-2664]; *see also Ohio v. Coleman*, 8th Dist. Cuyahoga No. 102291, 2015-Ohio-4491, ¶ 7 (finding that purpose may also be inferred from the defendant's conduct as well as his or her personality). Accordingly, "[i]f the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification,

and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." *Cobb* at 185.

*State v. Fears*, 8th Dist. Cuyahoga No. 104868, 2017-Ohio-6978, ¶ 65.

{¶ 25} Relevant to this appeal, each count of gross sexual imposition corresponded to three separate and distinct allegations of sexual contact in the criminal indictment. Count 1, for instance, alleged that Sims caused the minor victim to have sexual contact by "rubbing his penis on her butt." Count 2 alleged that Sims caused the minor victim to have sexual contact by "rubbing her butt on his penis." Finally, Count 4 alleged that Sims caused the minor victim to have sexual contact by "putting his penis on her [arm]."

{¶ 26} Viewing the evidence in a light most favorable to the prosecution, we find the state presented sufficient evidence to support the gross sexual imposition offenses charged in Counts 1 and 4 of the indictment. In this case, there is no dispute that the Child Victim was under the age of 13 in September 2020. With respect to the allegations of sexual contact, the prosecution presented ample evidence establishing (1) Sims's presence in the home on the night of the incident, and (2) his primary transfer of DNA to the "outside back buttocks area" of the victim's pajamas. (Tr. 371.) In addition, the Child Victim, who was just 13 years old at the time of trial, provided a detailed accounting of Sims's actions on the night in question. During one interaction, Sims touched the Child Victim's arm with his penis, unsuccessfully attempted to have her touch his penis, and asked her not to tell anyone about his conduct. Later that evening, Sims returned to the living room and positioned

himself under the blanket the Child Victim was using on the couch. Sims then "came up from behind [the Child Victim] and his private part touched [her] butt." (Tr. 249.) The Child Victim testified that she dissuaded further contact by "scoot[ing]" away from Sims, but that she did not attempt to run out of the room because she was "scared," "creeped out," and "didn't know what to do." (Tr. 249.)

{¶ 27} Given the type, nature, and circumstances of Sims's contact with the Child Victim, we find a reasonable juror could infer that Sims did touch the Child Victim, then less than 13 years of age, with his penis for the purpose of sexual arousal or gratification. Accordingly, as it relates to Counts 1 and 4 of the indictment, we find the essential elements of R.C. 2907.05(A)(4) were proven beyond a reasonable doubt.

{¶ 28} Moreover, we are unable to conclude that this is the exceptional case in which the evidence weighs heavily against a conviction on Counts 1 and 4 of the indictment. Here, the Child Victim's description of Sims touching her arm and buttocks with his penis was entirely consistent with the statements she provided to her family, the investigating officers, and the medical examiners. The trier of fact was provided with all relevant evidence and defense counsel had the opportunity to explore any perceived inconsistencies in the victim's testimony on cross-examination. Accordingly, we find the gross sexual imposition convictions corresponding to Counts 1 and 4 are not against the manifest weight of the evidence.

{¶ 29} Regarding the allegations levied in Count 2 of the indictment, however, we agree with Sims's contention that the record is devoid of testimony

demonstrating that he engaged in a third instance of gross sexual imposition. On appeal, the state suggests that the evidence establishes beyond a reasonable doubt that "Sims had both rubbed his penis on [the Child Victim's] butt and rubbed [her] butt on his penis in two separate instances, constituting two counts of gross sexual imposition." Interpreting the testimony presented at page 249 of the transcript, the state contends that after the Child Victim "scooted up" in response to the conduct constituting Count 1 of the indictment, "Sims then began 'rubbing [the Child Victim's] butt on his penis,' rendering [her] unable to run away or get help because she feared Sims." The state summarizes its position as follows:

> The second instance, also reflected in Count 2 of Sims's indictment, involved Sims "rubbing [the Child Victim's] butt on his penis." This instance occurred around the same time [as Count 1], when Sims was laying behind [the Child Victim]. [The Child Victim] scooted up to discontinue the contact between herself and Sims's penis. Sims continued his behavior for one or two minutes before he finally left. This constituted Sims's second instance of gross sexual imposition, as [the Child Victim] tried to evade Sims's advances, but Sims continued his conduct.

{¶ 30} Having reviewed the relevant portions of the Child Victim's testimony, we find no merit to the state's characterization of the evidence. As discussed above, the Child Victim was diligently questioned on direct examination about Sims's conduct when he laid next to her on the living room couch. During this encounter, the Child Victim testified that Sims lifted her blanket and touched her buttocks with his penis. Contrary to the state's assertion on appeal, the Child Victim did not provide any additional testimony to suggest that Sims continued or otherwise reengaged in sexual contact with the Child Victim after she moved her

body away from him on the couch. The record is simply silent on this issue. Here, the Child Victim only testified that she and Sims did not speak after she "scooted up" on the couch and that Sims left the room shortly thereafter. (Tr. 249.) In the absence of direct testimony on the allegation posed in Count 2 of the indictment, we are required to find the evidence was insufficient to support a conviction on this count of gross sexual imposition. *See State v. Schwirzinski*, 6th Dist. Wood No. WD-09-056, 2010-Ohio-5512, ¶ 36 (finding that the evidence must conform to the allegations contained in the indictment and the bill of particulars).

{¶ 31} The first and second assignments of error are overruled in part and sustained in part. The conviction for gross sexual imposition (Count 2) is vacated.

## B. Allied Offenses of Similar Import

{¶ 32} In the third assignment of error, Sims argues his gross sexual imposition convictions are allied offenses of similar import. He contends that his convictions should have merged for the purposes of sentencing because "there were no intervening acts and it was part of a single court of conduct; there was a single harm; the acts were not committed separately, and there was a single animus and motivation."

{¶ 33} Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However,

> [w]here the defendant's conduct constitutes two or more offenses of
> dissimilar import, or where his conduct results in two or more offenses

of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B).

{¶ 34} In determining whether offenses are subject to merger for sentencing under R.C. 2941.25, courts evaluate three separate factors — the import, the conduct, and the animus. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraphs one and three of the syllabus. Offenses do not merge, and a defendant may be convicted of and sentenced for multiple offenses, if any one of the following is true: (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id.* at paragraph three of the syllabus, ¶ 25, 31.

{¶ 35} Offenses are dissimilar in import or significance within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23. Thus, "a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Id.* at ¶ 26. "The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import." *Id.*

{¶ 36} Offenses are committed separately within the meaning of R.C. 2941.25(B) if "'one offense was complete before the other offense occurred, * * * notwithstanding their proximity in time and that one [offense] was committed in

order to commit the other.'" *State v. Woodard*, 2d Dist. Montgomery No. 29110, 2022-Ohio-3081, ¶ 38, quoting *State v. Turner*, 2d Dist. Montgomery No. 24421, 2011-Ohio-6714, ¶ 24. Thus, "'when one offense is completed prior to the completion of another offense during the defendant's course of conduct, those offenses are separate acts.'" *Id.*, quoting *State v. Mooty*, 2014-Ohio-733, 9 N.E.3d 443, ¶ 49 (2d Dist.).

{¶ 37} For purposes of R.C. 2941.25(B), animus has been defined as "'"purpose or more properly, immediate motive."'" *State v. Priest*, 8th Dist. Cuyahoga No. 106947, 2018-Ohio-5355, ¶ 12, quoting *State v. Bailey*, 8th Dist. Cuyahoga No. 100993, 2014-Ohio-4684, ¶ 34, quoting *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). "'If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses.'" *State v. Lane*, 12th Dist. Butler No. CA2013-05-074, 2014-Ohio-562, ¶ 12, quoting *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 13. "Animus is often difficult to prove directly but must be inferred from the surrounding circumstances." *Id.*, citing *State v. Lung*, 12th Dist. Brown No. CA2012-03-004, 2012-Ohio-5352, ¶ 12.

{¶ 38} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct" and "an offense may be committed in a variety of ways." *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 26, 30. "'[T]his analysis may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases. But

different results are permissible, given that the statute instructs courts to examine a defendant's conduct — an inherently subjective determination.'" *Id.* at ¶ 32, quoting *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 52 (plurality opinion per Brown, C.J.).

{¶ 39} Our review of whether two offenses are allied offenses of similar import is generally de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28. However, in this case, Sims did not object to the imposition of multiple sentences on the gross sexual imposition offenses and, therefore, he has waived all but plain error. (Tr. 536-537); *State v. Tate*, 8th Dist. Cuyahoga No. 97804, 2014-Ohio-5269, ¶ 35. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *State v. Robinson*, 8th Dist. Cuyahoga No. 110467, 2022-Ohio-1311, ¶ 48. Notice of plain error, however, is to be taken in exceptional cases and only when necessary to prevent a manifest miscarriage of justice. *Id.*

{¶ 40} Relevant to his appeal, Ohio courts have recognized that

[i]ntimate sexual contacts with a victim that constitute the offense of gross sexual imposition may be treated as separate offenses for the purposes of R.C. 2941.25(B) in at least two instances: (1) where the evidence demonstrates either the passage of time or intervening conduct by the defendant between each incident; and (2) where the evidence demonstrates the defendant's touching of two different areas of the victim's body occurred in an interrupted sequence.

*State v. Cole*, 6th Dist. Erie No. E-18-061, 2019-Ohio-5425, ¶ 20, quoting *State v. DeGarmo*, 5th Dist. Muskingum No. CT2018-0061, 2019-Ohio-4050, ¶ 26; *see also State v. Tate*, 8th Dist. Cuyahoga. No. 77462, 2000 Ohio App. LEXIS 4960 (Oct. 26,

2000). Accordingly, if Sims "committed acts separated by the passage of time or engaged in sexual contact involving more than one erogenous zone, even if in one brief episode, each instance may form the basis for separate counts and are not allied offenses." *Id.*

{¶ 41} With respect to Counts 1 and 4 of the indictment,[2] we find the evidence at trial established that Sims committed distinct acts of gross sexual imposition against the Child Victim by touching her arm and buttocks with his penis. Contrary to Sims's characterization of the evidence on appeal, the Child Victim testified that these acts occurred during separate encounters with Sims during the night in question. As discussed, the Child Victim testified that the first instance occurred when Sims positioned himself next to the Child Victim on the living room couch and placed his penis on her arm. After Sims left the room and the Child Victim fell asleep, Sims later returned to the living room and touched the Child Victim's buttocks with his penis. Given the passage of time between each incident and the evidence establishing Sims's touching of more than one area of the victim's body in an interrupted sequence, we find the convictions correlated to separate acts of gross sexual imposition that were dissimilar in import and significance. Thus, the trial court did not commit plain error by failing to merge the two counts of gross sexual imposition charged in Counts 1 and 4 of the indictment.

{¶ 42} The third assignment of error is overruled in part and moot in part.

---

[2] Having determined that Sims's conviction for gross sexual imposition in Count 2 of the indictment was not supported by sufficient evidence, any merger argument pertaining to this offense is now moot.

{¶ 43} Judgment affirmed in part and vacated in part. The cause is remanded for the trial court to vacate the conviction on Count 2 of the indictment.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, P.J., and
MARY EILEEN KILBANE, J., CONCUR